**Gino PIZARRO, Petitioner,**

v.

**David R. HARRIS, Superintendent, Green Haven Correctional Facility, Respondent,**

and

**The Attorney General of the State of New York, Additional Respondent.**

**No. 80 Civ. 144.**

United States District Court, S. D. New York.

Feb. 2, 1981.

---

**21.** *Cf. Finetti v. Harris,* 609 F.2d 594, 599–601 (2d Cir. 1979).

Gino Pizarro, pro se.

Robert Abrams, Atty. Gen., State of N. Y. by Eleanor Janosek Doyle, Deputy Asst. Atty. Gen., New York City, for respondents.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Gino Pizarro filed this *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. On March 5, 1976, petitioner was convicted of first and second degree robbery after a jury trial in New York State Supreme Court, Bronx County. He was sentenced as a predicate felon to concurrent, indeterminate sentences of twelve and one-half to twenty-five years and seven and one-half to fifteen years. An unsuccessful appeal was taken to the Appellate Division, First Department, and leave to appeal to the Court of Appeals was denied.

Pizarro then filed this petition, and following this court's preliminary consideration of his claims, respondent was ordered to file an answer. *Pizarro v. Harris*, 80 Civ. 144 (S.D.N.Y. Mar. 14, 1980). Petitioner claims that his convictions were constitutionally invalid because he was deprived of his sixth amendment right to effective assistance of counsel. For the reasons stated below, the petition is dismissed.

On May 2, 1975, Joseph Balayty, a seventy-six year-old jeweler, was assaulted and robbed in the lobby of his apartment building. The assailant reportedly disarmed Balayty, threatened him with his own gun, and then stole his wallet, check book, watch, money, money clip and ring. Petitioner was arrested on May 9, 1975, and Balayty and Reuben Cardona, the building superintendent who responded to Balayty's cries of help, independently identified him as Mr. Balayty's assailant.

Prior to petitioner's trial, Justice Quinn of New York State Supreme Court, held a *Wade* hearing to determine the validity of the photographic identification procedure used by the police. The court appointed Stanley Green to be Pizarro's counsel. Justice Quinn found that the identification procedure used to establish petitioner as Balayty's assailant was not constitutionally defective and he refused to suppress this evidence.

At a jury trial before Justice Joseph Sullivan Pizarro was again represented by

Green. The trial record reveals that shortly after jury selection had begun, petitioner, with the aid of a Spanish interpreter, made the first of several attempts to have Mr. Green replaced as his court appointed counsel. Justice Sullivan denied the application, expressing his dissatisfaction with petitioner's explanation for this request.[1] Pizarro continued to protest that he did not want Green to act as his counsel and directed Green not to participate in the trial. For the remainder of the trial, Green obeyed his client's instructions and did not act on petitioner's behalf. Nonetheless, in accordance with the court's directions, Mr. Green remained at Pizarro's side throughout the trial, ready to assist petitioner should he be called on to do so. As the trial record shows, petitioner was informed of his right to proceed *pro se*, but he made clear that he did not wish to defend himself:

THE DEFENDANT (THROUGH INTERPRETER): I want another lawyer. I don't want Mr. Green defending me no more.

THE COURT: Mr. Green is following the directions and he will not defend you but at my insistence, direction, Mr. Green, will remain in the courtroom at the counsel table.

THE DEFENDANT (THROUGH INTERPRETER): I don't want Mr. Green to represent me. I want another lawyer.

THE COURT: I won't give you another lawyer. We made a record. That's it.

THE DEFENDANT (THROUGH INTERPRETER): I don't want nothing to do with Mr. Green

\* \* \* \* \* \*

THE DEFENDANT (THROUGH INTERPRETER): I want a good lawyer at my right side.

THE COURT: Do you want to represent yourself?

THE DEFENDANT (THROUGH INTERPRETER): I can't do it. I don't know anything about the law. I don't want Mr. Green. I want another lawyer. (Tr. 46–47).

Contrary to warnings from the court to remain quiet,[2] petitioner continued to protest. Justice Sullivan had Pizarro bound and gagged and placed in a room out of the jury's presence where he could listen to the proceedings. He remained there throughout the testimony of Balayty, the prosecution's first witness, but returned to court for the remainder of the trial after promising not to disrupt the proceedings.

Once back in the courtroom, petitioner again attempted to replace Green. In contrast to his first request, Pizarro cited specific examples of his counsel's alleged incompetence. They were: that Green had not interviewed prospective witnesses or prepared witnesses for trial; that Green had not investigated petitioner's alibi defense; and that Green had not sought a bail reduction for petitioner. (Tr. 82–83). Justice Sullivan held a short hearing in which he ordered Green to answer petitioner's charges. Justice Sullivan, having been satisfied by Green's answers to petitioner's charges, again denied petitioner's application for new counsel. Petitioner and his counsel, who continued to follow his client's instruction that he not represent him, then stood mute for the remainder of the prosecution's presentation, making no objections and declining to cross-examine the prosecution's witnesses.

Justice Sullivan, realizing that Green was not going to participate in the trial, permit-

1. Petitioner's initial reason for replacing Green was that he had lost confidence in him because he could see how the prosecutor was imposing his will at the trial. (Tr. 3).

2. THE DEFENDANT: [Addressing the Court]: You're telling me that's my lawyer. I don't suppose to talk. I'm telling you before and in the room I tell you before I will tell the jurors he's not my lawyer.

THE COURT: Are you finished? Captain, I asked you for, earlier, to bring down some of the apparel that we may use. Would you bring it out? Would you show it to the defendant? Could we have a gag? Could we have the chains? Leg Irons? We are going to do this anyway. You want it Mr. Pizarro? I'm not going to tolerate an outburst of this—that gag will be put on you next time. Do you understand me? Don't point your finger at me. (Tr. 39–40).

ted Robert Keshner, an appellate division lawyer, to conduct the defense case. With Green's assistance, Keshner examined Pizarro's three alibi witnesses and made closing argument to the jury. Despite these efforts by defense counsel, the jury found petitioner guilty of first and second degree robbery.

## I

Petitioner argues that his conviction was unconstitutional because he was denied his sixth amendment right to effective assistance of counsel. The threshold issue raised by this claim is whether petitioner's applications for different counsel during his trial were properly denied. In reviewing petitioner's claims, the court must consider " 'the reason for the request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel.' " *Pizarro v. Harris,* 80 Civ. 144 (S.D.N.Y. Mar. 14, 1980), *quoting Sapienza v. Vincent,* 534 F.2d 1007, 1010 (2d Cir. 1976).

While the sixth amendment requires that "the accused shall enjoy the right ... to have the assistance of counsel for his defense" in state criminal prosecutions, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), an indigent defendant has no absolute right to the counsel of his choice. *United States v. Davis,* 604 F.2d 474, 478 (7th Cir. 1978). Although petitioner is in no way to be faulted for his desire to substitute counsel, the second circuit has held:

> "Once the trial has begun with the defendant represented by counsel ... his right to discharge his lawyer and represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance."

*United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir. 1965), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966). The record here shows that petitioner's first application to replace his counsel was without substance. Pizarro initially argued—even before the first witness had taken the stand—that he had lost confidence in Green, because, in Pizarro's view, the prosecutor was imposing his will on the defense at the trial. (Tr. 3). Since petitioner's argument was patently without merit, Justice Sullivan did not err in summarily dismissing petitioner's first application to replace Green.

Indeed, when Pizarro gave specific reasons for his request to remove Green, the court made an appropriate inquiry into petitioner's allegations that Green had not interviewed or prepared his five alibi witnesses, that Green had not spoken to anyone, and that Green had not sought a bail reduction. (Tr. 82–83). Green answered these charges by explaining that bail applications were made and were denied, that he had spoken to two of petitioner's witnesses, one of them just two weeks before the start of trial, that he could not locate two of petitioner's witnesses, and that he was prepared to call one of these witnesses. Justice Sullivan was satisfied with these answers, and he again denied Pizarro's application. Based upon this record, it cannot be said that the trial judge erred in finding that the prejudice to petitioner's legitimate interests did not overbalance the potential disruption to the proceedings already in progress and that a sufficient basis existed to deny petitioner's application.[3]

## II

Having concluded above that petitioner's applications for new counsel were properly denied, the court must consider the question of whether petitioner was denied effective assistance of counsel or whether he waived his right to counsel. In *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1416 (1938), the Supreme Court explained:

---

**3.** Since Green was not found to have provided Pizarro with ineffective assistance, petitioner's claim that Green's law firm, the Office of William Gallagher, is susceptible to the charge of ineffective assistance of counsel is also without merit.

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background experience and conduct of the accused."

*Johnson v. Zerbst, supra,* at 464, 58 S.Ct. at 1023.

While courts must "indulge every reasonable presumption against waiver," and cannot presume acquiescence in the loss of fundamental rights, *id.,* a defendant's refusal without good cause to proceed with able appointed counsel is a "voluntary" waiver of his right to counsel. *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976), *citing United States ex rel. Testamark v. Vincent,* 496 F.2d 641 (2d Cir. 1974). It is well-settled that a court need not grant a defendant's request for the appointment of new counsel unless the defendant makes a showing of good cause. *United States v. Curtiss,* 330 F.2d 278, 280 (2d Cir. 1963). Where, as here, the court refuses to grant such an application, a defendant may be presented with the choice of proceeding with his appointed counsel, or waiving his right and proceeding *pro se.* A defendant who stands mute and does nothing after being presented with this choice is deemed to have waived his right to counsel. *United States ex rel. Testamark v. Vincent, supra,* at 643.

The second circuit has explained what procedures should be followed when a defendant removes his trial counsel:

"The presiding judge should conduct some sort of inquiry bearing upon the defendant's capacity to make an intelligent choice. In other words, there must be a record sufficient to establish to our satisfaction that the defendant 'knows what he is doing and his choice is made with eyes open.'"

*United States v. Plattner,* 330 F.2d 271, 276 (2d Cir. 1964). Once the trial has begun, forcing a criminal defendant to choose between continuing the trial with his appointed counsel or proceeding *pro se* is not "constitutionally offensive," especially where defendant's court-appointed lawyer is willing and able to conduct the defense. *Wilks v. Israel,* 478 F.Supp. 404, 409 (E.D.Wis. 1979). *Accord: Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976); *United States ex rel. King v. Schubin,* 522 F.2d 527, 529 (2d Cir. 1975) (per curiam). The justification for this policy is evident. The court cannot permit the accused to manipulate his right to counsel so as to obstruct the orderly procedures of the trial or to interfere with the fair administration of justice. *See United States v. Calabro,* 467 F.2d 973 (2d Cir. 1972).

Here, the record reveals that Justice Sullivan correctly explained the alternatives to petitioner, and that Pizarro was fully aware of the consequences of his decision not to permit Green to act as his attorney. It is undisputed that, at the time of his trial, Pizarro was a thirty-seven-year-old, unemployed bartender who, although he required the assistance of a Spanish interpreter, had no problem understanding the court's order or communicating with the court. The trial record indicates that Pizarro was accorded a full explanation of his right to counsel and his right to waive counsel. *Cf. United States ex rel. Higgins v. Fay,* 364 F.2d 219, 223 (2d Cir. 1966) (defendant "not accorded a clear cut explanation of his rights"). Moreover, as is reflected in the conversations between the court and Pizarro set forth in the margin, petitioner was also aware of the consequences of his actions.[4] On the record be-

---

4. THE COURT: [Following petitioner's first application to have his counsel replaced]: All right. Application denied. You don't have a right to a lawyer of your choosing. You have a right to a competent lawyer and the Court has fulfilled its obligation to you. You can't afford your own lawyer and the court is giving you

Mr. Green who I know and am familiar with who has tried cases before me and I know him to be competent and diligent and I see no evidence here at all of any failure to tend to his obligations or to prepare this case nor—he is approaching his responsibilities in a diligent fashion as he always is, even at this juncture in

fore me, I conclude that, by refusing to proceed *pro se* and by directing his court appointed counsel to remain silent, Pizarro waived his right to counsel. *Cf. United States ex rel. Testamark v. Vincent, supra,* at 644.

 Petitioner cannot now be heard to complain that he was denied effective assistance of counsel. Accordingly, this petition for a writ of *habeas corpus* is denied in all respects. A certificate of probable cause (28 U.S.C. § 2253) will not issue since there are no questions of substance on which the Court of Appeals should rule. Furthermore, this court certifies that any purported appeal *in forma pauperis* from this order is not taken in good faith because an appeal would be frivolous. 28 U.S.C. § 1915(a); *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 920, 8 L.Ed.2d 21 (1962); *United States v. Visconti,* 261 F.2d 215, 218 (2d Cir. 1958), *cert. denied,* 359 U.S. 954, 79 S.Ct. 743, 3 L.Ed.2d 762 (1959).

SO ORDERED.

jury selection. I note that his real complaint is not with Mr. Green but with Mr. Warner [the prosecutor] and that's not my problem. He may not like the intelligence with which Mr. Warner is prosecuting the case but that's not— application denied.

THE DEFENDANT (THROUGH INTERPRETER): Well, that's your right, your Honor, to deny me my application but I want to say, I think, there is a law.

\* \* \* \* \* \*

THE COURT: I have indicated I find that he's getting a proper defense from a competent lawyer.

THE DEFENDANT: I'm accused here, your Honor, and I refuse to continue with him as my lawyer.

THE DEFENDANT: [Addressing the Court] ... You want me to take the lawyer. I don't want to. You want me to take him.

THE COURT: That's right.

THE DEFENDANT: I want all that people [the jury] know that because I tell you three times I don't want him.

THE COURT: We know that. The record is made. It does no good here to show—

THE DEFENDANT: Why are you forcing me to take it—

THE COURT: That's because that's the law . . . .

(Tr. 38–39).

THE DEFENDANT (THROUGH INTERPRETER): I'm not ordering Mr. Green to stand mute, your Honor. I just don't want him as my lawyer.

THE COURT: We understand that but in the absence of a willingness to represent yourself, I'm not forcing you to, I'm going to insist that Mr. Green be here. He will not ask questions but at your request.

THE DEFENDANT (THROUGH INTERPRETER): I don't want to continue with this. You're forcing me. I do not want to do it. You're forcing me to do a thing I don't want to do.