[818 NE2d 1125, 785 NYS2d 384]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL HENRIQUEZ, Appellant.

Argued September 9, 2004; decided October 19, 2004

## POINTS OF COUNSEL

*Legal Aid Society Criminal Appeals Bureau,* New York City (*Allen Fallek* and *Laura R. Johnson* of counsel), for appellant. Appellant was denied his Sixth Amendment right to a criminal trial in which the prosecution's case was tested by the adversarial process where defense counsel felt bound by appellant's direction to do nothing and the court ensured that counsel fully complied with appellant's direction. (*Strickland v Washington,* 466 US 668; *Wainwright v Sykes,* 433 US 72; *Jones v Barnes,* 463 US 745; *People v Ferguson,* 67 NY2d 383; *Taylor v Illinois,* 484 US 400; *People v Petrovich,* 87 NY2d 961; *People v Rivera,* 71 NY2d 705; *Wheat v United States,* 486 US 153; *Matter of Abrams [John Anonymous],* 62 NY2d 183; *People v Claudio,* 85 AD2d 245.)

*Robert T. Johnson, District Attorney,* Bronx (*Peter D. Coddington* of counsel), for respondent. Having steadfastly barred defense counsel from presenting a defense, despite the repeated efforts by the court and defense counsel to convince him to allow defense counsel to actively represent him, appellant may not obtain a new trial based on a claim that he was deprived of his right to effective assistance of counsel or his right to a criminal trial in which the prosecution's case was tested by the adversarial process. (*People v Nieves,* 90 NY2d 426; *New Hampshire v Maine,* 532 US 742; *United States ex rel. Testamark v Vincent,* 496 F2d 641, 421 US 951; *Pizarro v Harris,* 507 F Supp 642; *Kates v Nelson,* 435 F2d 1085; *People v Kelly,* 60 AD2d 220, 44 NY2d 725; *People v Petrovich,* 87 NY2d 961; *People v Lineberger,* 98 NY2d 662; *People v Baghai-Kermani,* 84 NY2d 525; *People v McElveen,* 234 AD2d 228.)

## OPINION OF THE COURT

Graffeo, J.

The issue in this case is whether Supreme Court violated defendant's Sixth Amendment rights by allowing a trial to proceed after defendant refused to permit his assigned counsel to participate in his defense and defendant declined to represent himself. Under the circumstances of this case, we conclude that the court did not violate defendant's right to a fair trial.

In March 1994, defendant Michael Henriquez approached a police car and informed an officer that he had just killed his

paramour. Police officers who arrived at defendant's residence found the victim dead from numerous gunshot wounds to her head. After he was taken to a police station for questioning, defendant provided detailed written and videotaped statements in which he confessed to shooting his girlfriend multiple times in the presence of their infant daughter. Defendant was subsequently charged with intentional murder in the second degree, illegal weapon possession and endangering the welfare of a child.

*Huntley* and *Sandoval* hearings were conducted prior to trial. Defendant's assigned counsel participated in those proceedings, securing the suppression of a statement by defendant on the basis that the prosecution failed to provide notice as required by CPL 710.30. During jury selection defense counsel questioned prospective jurors while defendant elected to be absent. Defendant returned to the courtroom for defense challenges to certain venire members.

Before opening statements were presented, defense counsel informed the trial judge that:

> "defendant advised me this morning that . . . he is directing me not to cross-examine any witnesses, not to object to any line of questioning, not to . . . approach the bench, not to participate in any bench conferences or side bars, not to have any defense in this case, not to call any witnesses, not to sum up, not to do anything.
>
> "He has indicated to me he just wants me to sit here and do nothing."

As a result of defendant's demands, counsel asked to be relieved of his assignment and requested that defendant be permitted to represent himself.

Defendant, however, indicated that he did not wish to proceed pro se. He declared, "I didn't ask to represent myself. You can't tell me I have to represent myself." The court confirmed the accuracy of defense counsel's recitation of defendant's commands and advised defendant that he did not have to act as his own attorney.

In response to further inquiry by the trial judge, defendant acknowledged that he had the right to make an opening statement, cross-examine the People's witnesses, testify on his own behalf, call witnesses and object to impermissible questioning by the prosecutor. Defendant also stated that he had discussed possible defenses with his lawyer and understood that they

would not be presented to the jury if his attorney remained mute. Despite the court's attempt to convince defendant that he was "foolish[ly]" waiving many "very important rights," defendant steadfastly refused to accept the participation of his counsel in trial proceedings. Faced with defendant's obstinancy in rejecting his attorney's participation while refusing to proceed pro se, the court denied defense counsel's application to withdraw and instructed him to remain available during the proceedings in the event defendant changed his mind and decided to consult with him or present a defense.

When an issue arose concerning the possible substitution of a juror, defense counsel advised the court that defendant would not allow him to provide any input on the matter and that the trial judge should act as he saw fit. Defendant also refused to take any position or allow counsel to comment on the court's proposed preliminary jury instructions at the outset of trial. Defense counsel renewed his application to be relieved, which the court denied by reiterating that counsel was expected to be ready to present a defense if defendant wished to do so. Before the jury was brought into the courtroom for opening statements, defendant reasserted that he was opting not to present a defense and was "not going to change [his] mind."

Defendant did not make an opening statement to the jury. Prior to the People presenting testimony, the court again secured defendant's "understand[ing]" that he was "free" to "change [his] mind" and allow his attorney "to make objections . . . or otherwise participate in the trial." Defendant did not do so and, therefore, his lawyer did not cross-examine the People's first witness.

The prosecutor then informed the court that he intended to introduce into evidence certain crime scene photographs and the murder weapon. Defendant told his counsel not to object. Two additional witnesses testified for the People without cross-examination by the defense. Before the next prosecution witness took the stand, defense counsel objected because the witness had been seated in the courtroom during the testimony of the earlier witnesses. In response to the court's concern that the objection had been raised without defendant's permission, counsel conferred with defendant and withdrew the objection. When adjourning for the evening, the court again urged defendant to reconsider how he was proceeding in the case.

The next morning, defendant stated that he was aware that he could change his mind to allow his attorney to participate in

the proceedings, but he insisted that counsel do nothing. When the People rested, both defendant and his attorney indicated that defendant had instructed counsel not to call any witnesses or make any motions on defendant's behalf. Although the court advised defendant that the affirmative defense of extreme emotional disturbance was available to him, defendant refused to seek a jury instruction related to that defense. Defendant declined to comment on jury instructions, telling the court to instruct the jury in whatever manner it deemed appropriate. No summation was presented on behalf of defendant. Nor did defendant object to any of the instructions given by the court to the jury before its deliberations.

The jury found defendant guilty of intentional murder in the second degree and other crimes. The Appellate Division upheld the conviction, concluding that defendant, after being consistently warned by the trial court about the pitfalls of his conduct, knowingly, intelligently and voluntarily waived his rights to present a defense, cross-examine or call witnesses, or testify on his own behalf. A Judge of this Court granted leave to appeal. We now affirm.

Defendant asserts that his constitutional right to a fair trial was violated because the trial court and defense counsel respected his desire to refrain from presenting a defense. This argument is premised on defendant's claim that he neither waived nor forfeited his Sixth Amendment right to the effective assistance of counsel. Defendant therefore contends that his attorney was ethically obligated to mount a defense and the trial court, by allowing counsel to remain mute, failed to insure that defendant's guilt be determined only after an adversarial proceeding.

The constitutional guarantee to due process of law provides criminal defendants with "the fundamental right to a fair trial" (*Strickland v Washington*, 466 US 668, 684 [1984]). The essential elements of this right are defined primarily by the Sixth Amendment:

> "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

With respect to an accused's right to counsel, "[t]he right of any defendant . . . to stand before a court with counsel at his side to safeguard both his substantive and procedural rights is inviolable and fundamental to our form of justice" (*People v Settles*, 46 NY2d 154, 161 [1978]; *see People v Felder*, 47 NY2d 287, 295-296 [1979]). Thus, an accused who requests legal representation cannot be forced to stand trial without the services of an attorney (*see e.g. Gideon v Wainwright*, 372 US 335, 344 [1963]; *Powell v Alabama*, 287 US 45, 71 [1932]).

It is also firmly established that, because "[t]he right to defend is given directly to the accused" (*Faretta v California*, 422 US 806, 819-820 [1975]), "the Constitution does not force a lawyer upon a defendant" (*Adams v United States ex rel. McCann*, 317 US 269, 279 [1942]; *see People v McIntyre*, 36 NY2d 10, 17 [1974]; *People v Bodie*, 16 NY2d 275, 279 [1965]). And "[w]hile the Sixth Amendment and the State Constitution afford a defendant the right to counsel or to self-representation, they do not guarantee a right to both. These are 'separate rights depicted on the opposite sides of the same [constitutional] coin' " (*People v Rodriguez*, 95 NY2d 497, 501 [2000], quoting *United States v Purnett*, 910 F2d 51, 54 [2d Cir 1990]). An accused awaiting trial therefore has only two choices regarding legal representation—proceed with counsel or waive the protection of the Sixth Amendment and proceed pro se.

In this case, the trial court was confronted with a defendant attempting to abuse the process. Despite defendant's refusals to allow his counsel to participate effectively on his behalf, he never asked that counsel be relieved and repeatedly rejected self-representation. The question that arises from this predicament is whether defendant could continue to have his counsel present at all stages of the proceedings but decide not to allow his lawyer to actively participate at his trial. Certainly trial courts need to discourage defendants from taking such a stance. It is far preferable for an accused, bent on controlling every aspect of the defense case and undermining counsel's ability to act as a zealous advocate, to accept self-representation and proceed pro se with assigned counsel serving not as an attorney but as a standby legal advisor. In this situation where defendant indisputably resisted pro se status, there was no comfortable solution to the dilemma facing the trial judge.[1]

---

**1.** Nor is the dissent's analysis a prescription for an orderly adversarial process. On the contrary, such an approach may provoke disruptive,

In cases where defendants have refused self-representation and restricted the participation of counsel, many courts have viewed defendants who adopt such postures as having voluntarily waived the right to the effective assistance of counsel (*see United States ex rel. Testamark v Vincent*, 496 F2d 641, 643-644 [2d Cir 1974], *cert denied* 421 US 951 [1975]).[2] Our precedent also leads to this conclusion.

In *People v Kelly* (44 NY2d 725 [1978], *affg* 60 AD2d 220 [1st Dept 1977]), the defendant rejected the services of his counsel after suppression motions but the trial court denied counsel's request to be relieved and directed the attorney to remain in court to be available to assist the defendant. In reviewing the defendant's claim of denial of his Sixth Amendment right to counsel, we agreed with the Appellate Division that the defendant's conduct did not equate to a request to proceed pro se and that the defendant was not denied the right to effective legal representation because he ordered his attorney not to participate in the trial. In such difficult circumstances, we concluded that it was appropriate for the trial court to deny counsel's motion to be relieved and direct the attorney to remain available to provide legal assistance if the defendant decided to present a defense. The Appellate Division in *Kelly* aptly observed that a defendant:

> "should not be permitted to nullify a trial and require a new trial by the simple expedient of obstructing every effort of the court to assure to the defendant his legal rights and a fair trial. There comes a point where a defendant must bear the consequences of his conduct, in a courtroom as well as out of it" (60 AD2d at 224).

So too must defendant in this case now accept the decision he knowingly, voluntarily and intelligently made, and the conse-

---

"obstreperous" objections from a defendant (*People v Stroman*, 36 NY2d 939, 940 [1975]) which could impede the court's effort to assure a fair trial. It may even result in the removal of the accused from the courtroom, thereby impairing a defendant's right to be present.

2. *See generally Morton v Foltz*, 782 F2d 1042 (table; text at 1985 WL 14072, *2-3, 1985 US App LEXIS 13779, *9-10) (6th Cir 1985), *cert denied* 479 US 1036 (1987); *Richardson v Lucas*, 741 F2d 753, 757 (5th Cir 1984); *Maynard v Meachum*, 545 F2d 273, 278 (1st Cir 1976); *Boyden v United States*, 427 F2d 895, 896 (9th Cir 1970), *cert denied* 400 US 848 (1970); *Pizarro v Harris*, 507 F Supp 642, 647 (SD NY 1981); *Fowlkes v State*, 311 Md 586, 606, 536 A2d 1149, 1159 (1988); *Massey v State*, 278 Ark 625, 626, 648 SW2d 52, 53 (1983); *State v Harper*, 381 So 2d 468, 471 (La 1980); *State v Gaye*, 532 SW2d 783, 790 (Mo Ct App, 4th Div, 1975).

quences of his intentional actions and choices. Regardless of how unwise that decision may have been, it was his to make (*see generally People v Bodie*, 16 NY2d at 279; *Faretta v California*, 422 US at 821). The record establishes that the efforts by the trial court were aimed at explaining the magnitude of the decision facing defendant, and although defendant was repeatedly informed of his right to utilize the services of his attorney, he continually declined the assistance of counsel. Defendant's responses reveal that he acted with full knowledge and appreciation of the panoply of constitutional protections that would be adversely affected by counsel's inability to participate—the right to make an opening statement to the jury, to cross-examine the People's witnesses, to present exculpatory or mitigatory evidence, to testify on his own behalf and to request favorable jury instructions or the submission of lesser included offenses. Because the trial court directed defense counsel to remain available to assist defendant (*see People v Kelly*, 44 NY2d 725), defendant was keenly aware that he could change his mind at any time and counsel would mount a defense. Defendant's desire to prevent counsel's participation, coupled with his adamant refusal to represent himself, translates into an intentional failure to avail himself of his constitutional "right to a fair opportunity to defend against the State's accusations" (*Chambers v Mississippi*, 410 US 284, 294 [1973]). "That defendant now questions the wisdom of his decision cannot relieve him of the consequences of his request" (*People v Petrovich*, 87 NY2d 961, 964 [1996]) and counsel cannot be charged with failing to provide meaningful or effective representation because that right was waived by defendant.

Defendant's remaining contentions, including those raised in his pro se brief, are unavailing.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (dissenting). Defendant was denied his constitutional rights to effective assistance of counsel and a fair trial when, after it became clear that defendant did not want to proceed pro se but wanted to have defense counsel serve as his legal representative, defense counsel followed defendant's directions not to do anything (e.g., cross-examine adverse witnesses and make objections) on defendant's behalf and, more importantly, the trial court allowed counsel not to do anything. The trial court and defense counsel did not adhere to the legal and

professional standards regarding the allocation of decision-making authority between the accused and defense counsel. This lack of adherence was illustrated when the trial court, although maintaining throughout the trial that defendant was represented by counsel, incorrectly accorded to defendant the right to make decisions regarding trial strategies and tactics, which decisions are generally reserved to counsel who has undertaken to represent one accused of a crime. As a result, the trial court and defense counsel failed to ensure that the adversarial testing process worked to produce a fair and just result in the instant case. I therefore dissent and vote to reverse defendant's conviction and remand for a new trial.

Colloquy Between the Court, Defendant and Defense Attorney

Defendant made statements to the police that, after finding his wife in a compromising situation with another man, he shot her numerous times and killed her. Defendant also stated that the other man got away. The circumstances of the incident raise the possibility of an affirmative defense of extreme emotional disturbance which could have lessened the conviction from murder in the second degree to manslaughter (Penal Law § 125.25 [1] [a]).

On March 25, 1996, prior to opening statements at trial and outside the presence of the jury, defendant, counsel who was appointed to represent defendant (Mr. Loverro) and the trial court engaged in the following colloquy:

> "MR. LOVERRO: . . . The defendant advised me this morning that he . . . is directing me not to cross-examine any witnesses, not to object to any line of questioning, not to call—to go even further, not to approach the bench, not to participate in any bench conferences or side bars, not to have any defense in this case, not to call any witnesses, not to sum up, not to do anything.
>
> "He has indicated to me he just wants me to sit here and do nothing . . .
>
> "It subjects me to two major problems down the road. Number one, if and when this case is ever appealed, if it comes to that, this issue of ineffective assistance of counsel—and I am hoping to allay that by making a record now but still I think the argument might be made any way and any potential

disciplinary complaints which would be outrageous since my hands are tied—this is basically a 'Catch 22'.

"Because of those concerns, legitimate concerns and the unreasonable demands that are being made on me, I am going to respectfully ask to be relieved on this matter and have this defendant represent himself.

"THE DEFENDANT: I didn't ask to represent myself. You can't tell me I have to represent myself.

"THE COURT: You don't have to represent yourself Mr. Henriquez but I want to confirm that what your attorney is saying is true, that you have instructed him not to make an opening statement, not to cross-examine any witnesses presented by the People, not to call any witnesses yourself and on your behalf and not to make a closing statement; is that—

"MR. LOVERRO: Not to object.

"THE COURT: Not to object—

"MR. LOVERRO:—to any line of questioning and basically, I think the long and short of it is he doesn't want me to do anything. He just wants me to sit here.

"THE COURT: Is that correct?

"THE DEFENDANT: Yes.

"THE COURT: You have to understand what it is that you are waiving by giving him those instructions.

"THE DEFENDANT: I do.

"THE COURT: What?

"THE DEFENDANT: I understand.

"THE COURT: Tell me what you are waiving.

"THE DEFENDANT: If I feel I want to do that, it shouldn't be any problem. It shouldn't be no problem.

"THE COURT: If you understand what you are doing. I just want to be sure.

"THE DEFENDANT: If I say I understand, there should be no problem.

"THE COURT: Look, I will determine the sufficiency of the record.

"THE DEFENDANT: What you are telling me is you can look in my mind and tell if I understand.

"THE COURT: I will ask you questions.

"THE DEFENDANT: I don't have to answer.

"THE COURT: Do you understand you have a right to make an opening statement in this case?

"THE DEFENDANT: I know I have a right to make an opening statement, to question Officer Palmiotti, Detective McCarthy, comment on the video and written statement but I am refusing to.

"THE COURT: Do you understand you have a right to testify in your own behalf?

"THE [DEFENDANT]: Yes.

"THE COURT: To call witnesses on your own behalf?

"THE DEFENDANT: Yes.

"THE COURT: The prosecutor may ask questions that your attorney believes are not proper questions, that are impermissible questions. He has a right to object to such questions. If I agree with him that they are not proper questions, then I would not permit those questions to be put to the witnesses.

"You have instructed him not to object to any questions; is that right?

"THE DEFENDANT: Yes. If the DA knows he is not supposed to ask those questions, why is he going to ask them?

"THE COURT: Here's the problem, okay. Sometimes it requires a ruling from the Court to be clear. Sometimes the questions he may want to ask, your attorney wouldn't mind being asked because it would be—the answer might be helpful to you. Your attorney can decide whether to object or not to object.

"I determine whether a question is permissible or not. But if your attorney doesn't object, I am not going to have the occasion to make a ruling because you are precluding me from doing that because you are not letting your attorney object. Do you understand that you are giving up your right to object to the questions?

"THE DEFENDANT: I understand.

"THE COURT: You know I take it you have discussed your possible defenses in this case with your attorney?

"THE DEFENDANT: I discussed it.

"THE COURT: You are not going to be able to present any of those defenses. You are not going to be able to argue through your attorney that any of those defenses are made out?"

The record then proceeds:

"THE COURT: You have at the very least, at the very least, the defense of extreme emotional disturbance to the murder charge. It is a defense that based on the videotape I would certainly present to the jury if you asked for it and maybe even if you don't."

Later, the trial court, apparently satisfied that defendant understood the trial rights he was "waiving" through his instruction to defense counsel and seeking to confirm that defendant wanted defense counsel to continue to represent him, had the following exchange with defendant:

"THE COURT: . . . In this courtroom you have not said you wanted to plead guilty so we are going to trial. If you want to raise no defenses at trial, if you want to ask no questions, if you want to make no opening statement, if you want to make no objections, if you want to have no closing argument made for you, if you want to call no witnesses, that's what will happen. That's what will happen but those are very, very important rights that you are waiving.

"You have, as I have indicated, defenses that you could raise in this case. You have discussed them with your attorney. Your attorney is anxious to make them on your behalf.

"THE DEFENDANT: I am not claiming anything. I just want to get it over with. I understand what you are saying. But I know the purpose of what you are saying. I know what you are saying. We can just get this finished with.

"THE COURT: You don't want any defenses raised on your behalf? You don't want to cross-examine the witnesses; is that right?

"THE DEFENDANT: Yes.

"THE COURT: You want Mr. Loverro to represent you. You don't want to represent yourself?

"THE DEFENDANT: No.

"THE COURT: But you don't want him to do anything on your behalf?

"THE DEFENDANT: No."

### Adherence to Defendant's Wishes by Court and Defense Attorney

Defense counsel complied with defendant's instructions. For example, when defense counsel sought to take positions as to whether certain evidence should be admissible or regarding proposed jury charges, he told the trial court that defendant did not permit him to take positions and no positions were taken. Additionally, the trial court felt bound to enforce defendant's instructions and, on numerous occasions, did enforce the instructions. At one point, the trial court stated, "Mr. Henriquez, I am respecting your right to restrict your attorney in the way he defends you." Moreover, the trial court repeatedly acknowledged during the trial that defendant was represented by counsel.

As a consequence of the trial court's and defense counsel's compliance with defendant's instructions, the People's case proceeded unchallenged. Defense counsel did not respond to the People's opening statement, did not make any objections, cross-examine the People's witnesses, make any oral motions at the close of the People's case, put on a case, make a closing statement or provide any input regarding proposed jury charges because defendant did not want him to. The trial court allowed defendant's instructions to control and allowed defense counsel not to do anything on defendant's behalf. The end result is that the actions, and lack thereof, of the trial court and defense

counsel deprived defendant of his constitutional right to a fair trial because the instant trial was devoid of the adversarial process, in violation of the United States and New York State Constitutions. Moreover, defendant was deprived of his constitutional right to assistance of counsel.

## The Federal and State Right to Counsel

Under the Sixth Amendment to the Federal Constitution, a criminal defendant has the right " 'to have the Assistance of Counsel for his defence.' This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty" (*Johnson v Zerbst*, 304 US 458, 462 [1938]). "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution" (*id.* at 465). The Sixth Amendment right to assistance of counsel is made obligatory on the states by the Fourteenth Amendment to the Federal Constitution (*see Gideon v Wainwright*, 372 US 335 [1963]). Article I, § 6 of the New York State Constitution provides in pertinent part that a defendant "shall be allowed to appear and defend in person and with counsel." New York State has provided greater protection to the right to counsel than required by the Federal Constitution (*see People v Bing*, 76 NY2d 331, 338-339 [1990]).

It is well settled that "the right to counsel is the right to the effective assistance of counsel" (*McMann v Richardson*, 397 US 759, 771 n 14 [1970]). Further, the United States Supreme Court has recognized on numerous occasions that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial" (*Strickland v Washington*, 466 US 668, 684 [1984]; *see also Powell v Alabama*, 287 US 45, 69 [1932]). A defense counsel has a duty to advocate the accused's cause and "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process" (*see Strickland*, 466 US at 688).

Under the Sixth Amendment, courts do not have the power "to deprive an accused of his life or liberty unless he has or waives the assistance of counsel" (*Zerbst*, 304 US at 463). "There is a presumption against the waiver of constitutional rights, . . . and for a waiver to be effective it must be clearly

established that there was 'an intentional relinquishment or abandonment of a known right or privilege' " (*Brookhart v Janis*, 384 US 1, 4 [1966], quoting *Zerbst*, 304 US at 464 [internal citation omitted]). Whether an accused has properly and intelligently waived the right to counsel depends, "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused" (*Zerbst*, 304 US at 464).

The Right to Self-Representation

The right to the assistance of counsel must be afforded to a person accused of a crime before that person can be validly convicted and punished by imprisonment (*see Faretta v California*, 422 US 806, 807 [1975]). However, the United States Supreme Court has held that, under the Sixth Amendment, a criminal defendant has the constitutional right to represent himself at trial when he voluntarily and intelligently elects to do so and that the defendant may not be forced to have any attorney represent him when he insists that he wants to conduct his own defense (*see Faretta*, 422 US at 819-820; *People v Davis*, 49 NY2d 114 [1979]). The Court noted that "[w]hen an accused manages his own defense, he relinquishes . . . many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits" (*Faretta*, 422 US at 835, citing *Zerbst*, 304 US at 464-465). Further, the Court stated that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open' " (*Faretta*, 422 US at 835 [citation omitted]). Before a defendant may proceed pro se, trial courts must conduct a " 'searching inquiry' of the defendant to be reasonably certain that the 'dangers and disadvantages' of giving up the fundamental right to counsel have been impressed on the defendant" (*People v Sawyer*, 57 NY2d 12, 21 [1982] [citations omitted]).

Further, while a criminal defendant has a fundamental right to counsel and a fundamental right to defend himself, he does not have the right to counsel while conducting a pro se defense (*see People v Ferguson*, 67 NY2d 383, 390 [1986]; *People v Mirenda*, 57 NY2d 261, 265-266 [1982]). However, it should be noted that in a case where defendant is proceeding pro se, a court may, even over that defendant's objection, appoint standby counsel to assist defendant if and when the defendant needs as-

sistance and be available to represent the defendant in the event that termination of defendant's self-representation becomes necessary (*see Faretta*, 422 US at 834-835 n 46; *Sawyer*, 57 NY2d at 22).

Here, it is undisputed that defendant was represented by counsel. Defendant clearly indicated that he wanted to be represented by counsel and not proceed pro se. Further, the trial court repeatedly announced during the trial that defendant was represented by counsel. As such, defendant had the constitutional right to the effective assistance of counsel during the trial.

Further, since defendant was represented by counsel at all times during the trial, he could not have waived his right to counsel. Accordingly, defense counsel was at all times under an affirmative obligation to represent defendant within the meaning of the law, i.e., provide effective assistance of counsel. Moreover, the trial court, as part of its overall duty to preside over a fair trial, had the responsibility of ensuring that defense counsel provided effective assistance to his client because failure in this regard would render the trial fundamentally unfair. The trial court and defense counsel failed in their respective duties to defendant and the trial process because they failed to appreciate the case law and professional standards regarding the allocation of decision-making authority between a criminal defendant and counsel who undertakes to defend a criminal defendant.

The Attorney's Authority in a Trial

A criminal defendant who is represented by counsel "relegates control of much of the case to the lawyer except as to certain fundamental decisions reserved to the client" (*see People v Ferguson*, 67 NY2d at 390; *People v Jordan*, 96 AD2d 1060, 1061 [2d Dept 1983], *affd* 62 NY2d 825 [1984]). These fundamental decisions are: whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal (*see Jones v Barnes*, 463 US 745, 751 [1983]; *Wainwright v Sykes*, 433 US 72, 93 n 1 [1977] [Burger, C.J., concurring]; *People v White*, 73 NY2d 468, 478 [1989]; *Ferguson*, 67 NY2d at 390).

While criminal defendants are ultimately responsible for the above decisions, defense counsel are charged with managing the day-to-day conduct of defendant's case and making strategic and tactical decisions (*see Faretta v California*, 422 US at 820-821; *Wainwright*, 433 US at 93 [Burger, C.J., concurring]; *Brookhart v Janis*, 384 US at 8 [separate op of Harlan, J.]; *People*

*v Jordan*, 96 AD2d at 1061). As a practical matter, since the daily management of the defense rests with defense counsel, these strategic and tactical decisions, for example, if and when to object, call witnesses and develop particular defenses, have to be made without consulting defendant (*see Wainwright*, 433 US at 93 [Burger, C.J., concurring]). The wide discretion defense attorneys have regarding strategic and tactical decisions was also noted by former United States Supreme Court Justice Harlan: "I believe a lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval. The decision, for example, whether or not to cross-examine a specific witness is, I think, very clearly one for counsel alone" (*Brookhart*, 384 US at 8 [separate op of Harlan, J.]).

American Bar Association Standards

The American Bar Association Standards for Criminal Justice Prosecution Function and Defense Function (3d ed [ABA Standards]) illustrate the recommended allocation of decision-making authority between the accused and defense counsel. The ABA Standards represent the prevailing norms of criminal defense practice and are guides used to determine what is reasonable regarding such practice (*see Strickland v Washington*, 466 US at 688). ABA Standard 4-5.2 entitled "Control and Direction of the Case" provides:

> "(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel include:

> "(i) what pleas to enter;

> "(ii) whether to accept a plea agreement;

> "(iii) whether to waive jury trial;

> "(iv) whether to testify in his or her own behalf; and

> "(v) whether to appeal.

> "(b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to

conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

"(c) If a disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relationship" (*see* ABA Standard 4-5.2 [3d ed 1993]).

ABA Standard 4-5.2 expanded the fundamental decisions reserved to a defendant under *Jones v Barnes* by adding the right to determine whether a proffered plea agreement should be accepted (*see* ABA Standard 4-5.2, Commentary, at 201 [3d ed 1993]). Further, under ABA Standard 4-5.2, when making any of the above fundamental decisions, "the accused should have the full and careful advice of counsel" (*id.*). "Ultimately, however, because of the fundamental nature of decisions such as these, so crucial to the accused's fate, the accused must make the decisions himself or herself" (*id.*).

Regarding defense counsel's decision-making authority, ABA Standard 4-5.2 grants wide discretion as evidenced by the fact that defense counsel must consult with defendant when, in counsel's judgment, such consultation is both "feasible and appropriate" (*id.*). "The language 'where feasible and appropriate' . . . reflect[s] the fact that sometimes consultation is virtually impossible, e.g., in the middle of cross-examination" (*see* ABA Standard 4-5.2, History of Standard, at 200 [3d ed 1993]).

The Lack of Effective Representation in This Case

In the instant matter, as previously noted, defendant was represented by counsel at all times during the trial. While represented by counsel, defendant had ultimate responsibility over certain fundamental decisions; however, he necessarily delegated certain case management, strategic and tactical decisions to defense counsel (*see Faretta v California*, 422 US at 820-821 [where the United States Supreme Court noted that "law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative" (internal citations omitted)]). This division of responsibility is

clear given the cited case law and professional standards. However, the trial court, by ensuring that defense counsel followed defendant's instructions prohibiting defense counsel from exercising his decision-making authority regarding case strategy and tactics, mistakenly increased defendant's rights at trial while at the same time limiting defense counsel's decision-making authority. This mistake was compounded when the trial court sought to determine whether defendant understood that he was waiving certain decisions pertaining to case strategy and tactics, e.g., to make an opening statement, to make objections and to cross-examine witnesses.

Former United States Supreme Court Chief Justice Burger noted that "[s]ince trial decisions are of necessity entrusted to the accused's attorney, the . . . standard of 'knowing and intelligent waiver' is simply inapplicable" (*Wainwright*, 433 US at 94 [concurring op]). Since defendant here was represented by counsel and did not have the privilege to make decisions regarding trial strategies and tactics, he could not waive them. Thus, the trial court's inquiry, regarding whether defendant understood the trial rights he was waiving based on his instructions to defense counsel, was improper.

By making strategic and tactical decisions in defense of one accused of a crime, an attorney renders effective representation and ensures that the adversarial process works to produce a just result. However, where, as in the instant case, the trial court allows defense counsel to follow defendant's instructions not to make the strategic and tactical decisions required in order to make the trial an adversarial proceeding, defendant is deprived of his right to effective assistance of counsel and a fair trial.

The Sixth Amendment right to effective assistance of counsel is fundamental to our criminal justice system because it affects a defendant's ability to assert any other rights he may have (*see United States v Cronic*, 466 US 648, 653-654 [1984]). The primary purpose of the right to effective counsel is to assure assistance by counsel at trial "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor" (*Cronic*, 466 US at 654). If no actual assistance at trial is provided, "then the constitutional guarantee has been violated" (*id.*)

The premise underlying our adversary system of criminal justice is the idea that "partisan advocacy on both sides of a

case will best promote the ultimate objective that the guilty be convicted and the innocent go free" (*Cronic*, 466 US at 655). Keeping this premise in mind, it is clear that the right to effective assistance of counsel requires the accused's counsel to act as an advocate and that this right " 'is meant to assure fairness in the adversary criminal process.' . . . Unless the accused receives the effective assistance of counsel, 'a serious risk of injustice infects the trial itself' " (*Cronic*, 466 US at 656 [internal citations omitted]). Accordingly, the right to the effective assistance of counsel is the right of the accused, through his attorney, to subject the prosecution's case to meaningful adversarial testing (*see id.*). Further, the accused's attorney is responsible for ensuring "that the adversarial testing process works to produce a just result under the standards governing [the] decision" (*Strickland v Washington*, 466 US at 687). This means that even if there is no defense available to defendant at trial, defense counsel "must hold the prosecution to its heavy burden of proof beyond reasonable doubt" (*Cronic*, 466 US at 657 n 19). When a criminal trial is adversarial, "the kind of testing envisioned by the Sixth Amendment has occurred" (*Cronic*, 466 US at 656). However, where the trial is not an adversarial proceeding, the accused has been deprived of his right to effective assistance of counsel (*see Cronic*, 466 US at 656-657). In other words, counsel has rendered ineffective assistance to the accused.

When evaluating ineffective assistance of counsel claims, courts consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" (*Strickland*, 466 US at 686). To make out an ineffective assistance of counsel claim under the Federal Constitution, defendant must establish that counsel's performance was deficient, that the deficient performance prejudiced defendant and thereby deprived defendant of a fair trial and reliable result, and that counsel acted unreasonably under the prevailing professional norms (*see Strickland v Washington*, 466 US at 686-694). Prejudice is established if "[t]he defendant . . . show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" (*Strickland*, 466 US at 694).

In New York, however, courts evaluating ineffective assistance of counsel claims will consider whether the "evidence, the

law and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" to defendant (*People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Henry*, 95 NY2d 563, 565 [2000]). Accordingly, the standard for effective assistance of counsel in New York is whether the defendant was afforded meaningful representation (*see Benevento*, 91 NY2d at 712; *People v Berroa*, 99 NY2d 134, 138 [2002]; *People v Stultz*, 2 NY3d 277, 283 [2004]). In resolving ineffective assistance of counsel claims, the attorney's performance should be evaluated to determine whether it is consistent with the performance of a "reasonably competent attorney" (*see Benevento*, 91 NY2d at 712). One major difference between the New York standard and the standard announced in *Strickland v Washington* is the way that prejudice is analyzed (*see Stultz*, 2 NY3d at 284). This Court indicated that under the New York standard, the prejudice test of *Strickland* need not be fully satisfied and that while a defendant's showing of prejudice is important, it is not an "indispens[a]ble element in assessing meaningful representation" (*Stultz*, 2 NY3d at 284). Further, this Court noted that "[o]ur focus is on the fairness of the proceedings as a whole" (*see id.*; *see also Benevento*, 91 NY2d at 714).

Here, defense counsel, an officer of the court, was appointed to represent defendant; as such, he was bound to render service to defendant (*see e.g. Powell v Alabama*, 287 US 45, 73 [1932]). Moreover, it is undisputed that defense counsel was defendant's legal representative throughout the trial. As defendant's legal representative at trial, defense counsel's role was very important because he was to be defendant's advocate (*see Cronic*, 466 US at 656)[1] and act in defendant's best interests.[2] Further, he was to subject the People's case to meaningful adversarial testing and thereby ensure that defendant received a fair trial (*see id.*;

---

**1.** Additionally, ABA Standard 4-1.2 (b) provides: "[t]he basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation" (*see* ABA Standard 4-1.2 [b] [3d ed 1993]).

**2.** New York Code of Professional Responsibility EC 7-9 provides in pertinent part: "[i]n the exercise of the lawyer's professional judgment on those decisions which are for the lawyer's determination in the handling of a legal matter, a lawyer should always act in a manner consistent with the best interests of the client." (*See* Code of Professional Responsibility EC 7-9 [1970].)

*Strickland v Washington,* 466 US 668, 688 [1984]). Defense counsel did not do any of those things because of his mistaken belief that he had to follow defendant's instructions to do nothing on defendant's behalf and the trial court's enforcement of defendant's instructions.

It should be noted that defense counsel was under no duty to execute defendant's directive to do nothing because the directive resulted in a trial that did not comport with the law, i.e., a trial devoid of fairness, in direct contravention to prevailing professional standards (*see* ABA Standard 4-1.2 [3d ed 1993]).[3] Moreover, defense counsel's failure to ensure that meaningful adversarial testing occurred deprived defendant of his right to counsel, resulted in a presumptively unfair and unreliable trial, and amounted to a complete denial of counsel (*see United States v Cronic,* 466 US 648, 659 [1984]). Thus, based on the fundamental importance of the right to counsel and the fact that defense counsel did not render any assistance, under either the federal standard or the New York standard, defense counsel's assistance was ineffective and consequently, the trial itself was unfair.

Additionally, the trial court facilitated the deprivation of defendant's rights. The United States Supreme Court has noted that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial" (*Cronic,* 466 US at 659). The Supreme Court has found violations of the right to effective assistance of counsel "without any showing of prejudice when counsel was . . . prevented from assisting the accused during a critical stage of the proceeding" (*Cronic,* 466 US at

---

**3.** ABA Standard 4-1.2 provides in pertinent part:

"(e) Defense counsel, in common with all members of the bar, is subject to standards of conduct stated in statutes, rules, decisions of courts, and codes, canons, or other standards of professional conduct. Defense counsel has no duty to execute any directive of the accused which does not comport with law or such standards. Defense counsel is the professional representative of the accused, not the accused's alter ego. . . .

"(h) It is the duty of defense counsel to know and be guided by the standards of professional conduct as defined in codes and canons of the legal profession applicable in defense counsel's jurisdiction. Once representation has been undertaken, the functions and duties of defense counsel are the same whether defense counsel is assigned, privately retained, or serving in a legal aid or defender program" (*see* ABA Standard 4-1.2 [3d ed 1993]).

659 n 25). Further, a trial court can violate "the right to effective assistance when it interferes . . . with the ability of counsel to make independent decisions about how to conduct the defense" (*Strickland v Washington*, 466 US 668, 686 [1984]). Here, the trial court, by enforcing defendant's instructions, prevented defense counsel from assisting defendant and interfered with defense counsel's ability to make independent decisions regarding how to conduct the defense. Although the trial court repeatedly asked defendant to let defense counsel put forth a defense, it also gave defendant unfettered discretion to restrict defense counsel's activities regarding the defense.

As defendant exercised control over defense counsel, the trial devolved into a nonadversarial proceeding that, under the Federal and New York Constitutions, was presumptively unfair because defense counsel failed to subject the People's case to meaningful adversarial testing. This means that only the People's side of the case was presented and that it was presented unchallenged. It also means that defense counsel could not hold the People to their heavy burden of proof beyond a reasonable doubt by challenging the veracity of adverse witnesses or performing any of the other functions defense counsel must necessarily perform in order to make a trial an adversarial proceeding under the law.

The argument that since the evidence against defendant was overwhelming, his counsel's ineffective assistance would not have changed the outcome of the trial is unavailing. Once it is determined that a defendant is going to trial, he is presumed innocent until proven guilty and his counsel is obliged to hold the prosecution to its heavy burden of proof beyond a reasonable doubt by engaging in meaningful adversarial testing. Additionally, the argument that defendant received the type of trial he wanted grants defendant too much power over the trial and affords defendant the opportunity to whittle away at the integrity of the trial process. Here, for example, the trial court allowed defendant to give instructions which eventually led to a trial that did not comport with the Federal and New York State Constitutions because it was fundamentally unfair.

It cannot be said that the instant trial promoted a just result or the ends of justice.

Accordingly, I dissent from the majority and vote to reverse defendant's conviction and remand for a new trial.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, READ and R.S. SMITH concur with Judge GRAFFEO; Judge G.B. SMITH dissents and votes to reverse and order a new trial in a separate opinion.

Order affirmed.