People v Lewis (2026 NY Slip Op 01588)

People v Lewis

2026 NY Slip Op 01588

Decided on March 19, 2026

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 19, 2026

No. 23 

[*1]The People & c., Respondent,
vJarvis Lewis, Appellant.

Zoë Root, for appellant. 
Amy N. Walendziak, for respondent. 

SINGAS, J.:
The trial court repeatedly informed defendant that it would not appoint new trial counsel, warned defendant that his trial would continue in his absence, and asked defendant whether he wished to proceed with his counsel's representation or represent himself. In response, defendant told the court that he fired his attorney, refused to respond to the court's attempted colloquies regarding his rights, continually left the courtroom when addressed, and refused to attend the trial. Under these circumstances, we hold that defendant, by his conduct, waived the right to the effective assistance of counsel. We also hold that the trial court erroneously imposed consecutive sentences for two counts of criminal possession of a weapon in the second degree under different theories, because the offenses arose from defendant's single act of possession. We therefore modify the Appellate Division order accordingly.I.

In 2007, defendant was convicted of first-degree rape following a jury trial and sentenced to 12 years' imprisonment. While on parole, in May 2021, defendant walked up to a vehicle in Rochester, removed a firearm from his waistband, and fired two shots into the vehicle, injuring two victims. Two weeks later, officers located and approached defendant and told him they wanted to speak with him about their investigation. Defendant then attempted to flee, and the officers chased and tackled him. During the ensuing struggle, defendant reached for a gun in his waistband, which the officers seized.
Defendant was charged with, among other crimes, four counts of second-degree criminal possession of a weapon—two counts for each incident date under different theories of possession (see Penal Law § 265.03 [1] [b] [intent to use unlawfully against another]; [3] [simple possession]).
Defendant retained private counsel about a month before trial.[FN1] In that time, defendant's counsel appeared at three pretrial conferences and successfully moved to preclude the People's firearms expert from testifying at trial. The day trial was scheduled to begin, defendant appeared in the courtroom dressed in his prison uniform and read a statement requesting that new counsel be assigned. Defendant claimed that his attorney was not acting in his "best interest" because the attorney had not provided defendant with discovery and other documents he requested, but defendant did not specify which documents his attorney had not given him, and counsel did not recall whether defendant had made any such requests. Noting counsel's competent representation throughout this case and others, Supreme Court denied defendant's request, stating that it was "simply an attempt to delay the trial."
Explaining that it was "ready to go," the court informed defendant that his attorney "w[ould] represent [him] throughout this process" and repeatedly asked defendant why he was not dressed in civilian clothing. Defendant did not answer. Instead, defendant reiterated his belief that his attorney was "ineffective" and stated that he did not "have anything else to say on the record," and that he was "not moving forward" with the trial. In response, the court repeatedly warned defendant that the trial would proceed and asked defendant if he wished to change into civilian clothing, warning defendant of the prejudice he could suffer by appearing before the jury in a prison uniform. Each time the court attempted to ask defendant further questions, he remained silent in response.
The court then directed an officer to bring defendant to a holding cell and give him another opportunity to change into civilian clothing and return to the courtroom. The court warned again that if defendant rejected that opportunity, "we will begin the trial."
After a recess, and outside defendant's presence, the court explained that defense counsel had spoken with defendant in the holding cell upon the court's request. According to defense counsel, defendant reiterated that "he d[id] not want [counsel] as his lawyer going forward, . . . object[ed] to the trial going forward . . . [,] [wa]s not coming to court, and ha[d] requested that the deputies bring him back to the jail." At this point, the court ordered counsel to "tell [defendant] that his requests are denied in all respects and that [the court] anticipate[d] moving forward with [counsel] as his attorney and in his absence because he's chosen to forego his constitutional right to be present for trial." Counsel relayed this message.
After another recess, defense counsel told the court that he and defendant had "an additional conversation in which [defendant] instructed [counsel] that he did not wish for [counsel] to represent him in this trial or to participate in the proceedings and in fact he directed [counsel] to leave." The court then told a court officer "to go down and tell [defendant], 'Last chance to come into the courtroom,' and if he refuses, we will proceed without him." After yet another recess, the officer testified that defendant continued to refuse to change into civilian clothing or be present for the trial. The court "order[ed] [counsel] to represent [defendant] irrespective of the circumstances," and informed counsel that "if at any point during the course of this proceeding [defendant] changes his mind and indicates that he wants to be present, we would love to have him here." Defense counsel then reiterated that defendant "explicitly instructed [him] not to participate in this proceeding" and "instructed [him] to leave." Counsel explained that he was "on the horns of a dilemma" and "quite frankly, d[id] not know what [his] ethical and legal obligations [we]re" given defendant's instructions to him. The court acknowledged that the situation was "a little bizarre" and said that it [*2]was "ordering [defense counsel] to be here as [defendant's] attorney." The court explained that the trial would move forward and ordered defense counsel to remain in the courtroom to represent defendant's interests, and told counsel, "Whether you do anything or not is up to you."
Following an additional recess, the court brought defendant into the courtroom. The court began by stating:
"[O]ne of the fundamental cornerstones of our constitution and our criminal justice system is that you're entitled to a jury trial, and that you're entitled to participate in that jury trial, and that you're entitled to participate in your defense. You're also entitled to take the stand if you so choose during the trial . . . Now, you and I have had some conversations on the record and you don't really want to be here. You've also apparently indicated to [defense counsel], because I've ordered him to come see you and have the conversation with you about the importance of you being here and participating in your defense, and he's indicated a couple things. Number one, you absolutely don't want to be here and, number two, you fired him and told him you don't want him to represent you. So I'm just going to ask you a couple questions . . . .
"[Y]ou have the opportunity to be here and be present during your trial. Would you like to be here and be present during your trial?"
Defendant responded: "Your Honor, I object to this whole thing and I fire [defense counsel] as my lawyer and I have no more things to say. Can I go back to the jail?"
At this point, the court asked defendant if he was "waiving [his] right to be present during the trial." Rather than responding, defendant began leaving the courtroom. Noting that defendant had the right to leave, the court asked him, "if you're going to fire [defense counsel], do you want to represent yourself?" Defendant again demanded "another attorney," and the court reiterated, "I won't give you another attorney, but you're free to represent yourself if you wish." Defendant then left the courtroom.
Addressing defense counsel, the court observed that "in the last week or two," "at least two other judges" had confronted "the same attempt by defendants to cause error for purposes of appeal." The court ordered defendant's attorney to remain present for the trial "as standby counsel," and counsel reiterated his intention to "follow the instruction of [his] now former client and not participate at all in these proceedings." The court then summoned the venire, excused several prospective jurors, and adjourned.
The court attempted, to no avail, to communicate with defendant about his rights and his decision not to participate on various occasions throughout the trial. On the first day, defendant again appeared in his prison uniform, remained silent when addressed by the court, and refused to identify himself for the record. The court stated that defense counsel "was and is going to continue to be [defendant's] attorney" and explained that it had summoned defendant "to make sure [he] understood the ramifications of [his] decisions." The court then asked defendant if he understood that he had the right to assist in his defense, confront adverse witnesses, testify on his own behalf, and be present at the trial in civilian clothes. Each question was met with silence. In its remarks, the Court again observed that "there has been a pattern of behavior, especially with those who have been incarcerated [*3]in the Monroe County Jail and who have had prior criminal justice experience, in attempting to delay trials by trying to fire their attorneys at the last minute and being otherwise difficult." The court further warned defendant that firing his attorney was "not going to happen" and that the "trial will proceed today." Defendant responded: "Your Honor, I fired [defense counsel] and I do not want to be here." The court again stated that it had ordered counsel to represent defendant and again asked defendant if he wanted to represent himself. Defendant did not answer and, instead, left the courtroom. The court resumed jury selection, at which defense counsel was present but did not participate.
On the second day of trial, with defendant present, the court yet again explained to defendant that it had "ordered [defense counsel] to remain as [his] counsel" and advised defendant that "it[ was] very important that [he] know how detrimental [his] failure to be here is." The court also asked defendant whether he had instructed his attorney "not to do anything." Defendant began leaving the courtroom rather than responding, and the court threatened him with a contempt charge. Defendant then replied, "I fired [defense counsel]. I don't have to do this." The court continued attempting to engage defendant in a colloquy, again to no avail:
"THE COURT: . . . I just want to make sure you understand what you're doing to yourself. You have an absolute right to be here. You have an absolute right to confront witnesses. You have an absolute right to have [defense counsel] assist you. You have an absolute right to represent yourself, but you told me you didn't want to. Do you want to represent yourself?
"THE DEFENDANT: I fired [defense counsel] and I chose not to be here, your Honor.
"THE COURT: Okay. So I'll assume that that means you don't want to represent yourself and I told you I won't let you fire [defense counsel] two minutes before the jury walks in the courtroom. And [defense counsel] told me you told him not to do anything, just to sit there. Is that right?
"THE DEFENDANT: No.
"THE COURT: What did you tell [counsel] about . . . his representation of you?
"THE DEFENDANT: Nothing. I fired him and I chose not to be here."
The court responded by reiterating defendant's right to be present; "strongly suggest[ing] that [defendant] be present"; advising defendant of his rights to give opening and closing arguments, cross-examine and confront witnesses, and have his attorney put on a case; asking whether defendant wanted to avail himself of any of these rights; and explaining yet again that, at this late stage, defendant could not fire his attorney. Defendant responded by repeatedly claiming that he had fired defense counsel and counsel no longer represented him, and stating that he did not want to be in the [*4]courtroom. Defendant then left, and the trial proceeded without him. Defense counsel again remained present but did not participate.
On the third and final day of trial, defendant was again brought into the courtroom. The court noted that the People had presented an opening statement and 10 witnesses and that "we may very well close proof today." Again attempting to engage defendant, the court asked whether he was aware of his right to be present and assist in his defense, and defendant did not respond. The court "really, really, really strongly suggest[ed]" that defendant be present and warned that defendant was making "a huge mistake." The court observed that defendant "told [defense counsel] not to do anything on [his] behalf," repeatedly explained that defendant could choose at any time to be present for the remainder of the trial and could also choose to represent himself, and again described many of the rights that defendant was foregoing through his absence. Defendant either repeated that he had fired his attorney and "wish[ed] not to be here" or remained silent in response to each question, and he walked out of the courtroom before the trial resumed.
At the close of the People's case, outside the jury's presence, defense counsel moved for a trial order of dismissal, rested, and did not otherwise participate. The People gave a closing argument and participated in responding to jury notes without defense counsel's input. The jury then convicted defendant on all counts.
For the shooting, Supreme Court sentenced defendant to 10 years' imprisonment for possession of a loaded firearm with the intent to use it unlawfully against another (count 1) and 10 years' imprisonment for simple possession of a loaded firearm (count 2). For the crimes arising from his arrest, defendant was sentenced to 10 years' imprisonment for possession of a loaded firearm with the intent to use it unlawfully against another (count 3), 10 years' imprisonment for simple possession of a loaded firearm (count 4), five years' imprisonment for second-degree assault (count 5), and one year's imprisonment for resisting arrest (count 6).[FN2] The court ordered the sentences on all weapon possession counts (1-4) to run consecutively to each other, and the sentences on the assault and resisting arrest counts (5-6) to run concurrently with those counts.
The Appellate Division affirmed, with two Justices dissenting (see 228 AD3d 1226 [4th Dept 2024]). The dissenting Justices would have held that defendant did not waive the right to effective assistance of counsel, and that his attorney failed to provide meaningful representation by complying with defendant's instruction not to participate in the trial (see id. at 1229-1233 [Montour & Ogden, JJ., dissenting]).
A Judge of this Court granted defendant leave to appeal (see 42 NY3d 1080 [2025]).II.
A.
"Waiver is a knowing, intelligent, and voluntary relinquishment of a known right" (People v Sargeant, — NY3d —, —, 2025 NY Slip Op 06361, *3 [2025]). Like other fundamental rights, a defendant's right to effective assistance of counsel may be waived (see People v Henriquez, 3 NY3d 210, 215-216 [2004]). We have explained that "[a]n accused awaiting trial . . . has only two choices regarding legal representation—proceed with counsel or waive the protection of the Sixth Amendment and proceed pro se" (id. at 215). Accordingly, when a defendant "refuse[s] self-[*5]representation and restrict[s] the participation of counsel . . . [they] hav[e] voluntarily waived the right to the effective assistance of counsel" (id. at 216).[FN3]
Whether the waiver of a fundamental right is valid "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused" (Johnson v Zerbst, 304 US 458, 464 [1938]; see People v Seaberg, 74 NY2d 1, 11 [1989]). "In many instances, the requisite affirmative showing that . . . [a] right[ ] ha[s] been knowingly, voluntarily, and intelligently waived will include a direct colloquy between the court and the defendant" (People v Myers, 32 NY3d 18, 22 [2018]). We have also long held that a defendant may waive certain fundamental rights by their conduct, most notably in the context of the right to be present (see e.g. People v Dunton, 42 NY3d 97, 106-109 [2024]; People v Parker, 57 NY2d 136, 139-140 [1982]; People v Johnson, 37 NY2d 778, 779 [1975]; see also Taylor v United States, 414 US 17, 19-20 [1973]). In determining whether such a waiver occurred, relevant circumstances include the warnings provided by the trial court, the defendant's actions in response, and whether, in light of the defendant's conduct, the trial court could practicably have administered additional warnings or attempted to secure an oral waiver.
In People v Epps, for example, the defendant refused to leave his cell to attend the trial as part of a prisoner "boycott" of the courts, despite the court's warning that the trial would proceed without him (37 NY2d 343, 346-347 [1975]). We held that the defendant waived his right to be present notwithstanding that he was not "brought before the court . . . [to] state his waiver on the record" (id. at 350-351). Eschewing an "overly rigid" approach, we reasoned that requiring officers to "bind and shackle [the defendant] and deliver him by force merely to pronounce a pro forma waiver would not only have constituted an empty gesture but on these facts may well have precipitated a more serious disturbance" (id. at 351). We observed, too, that "allow[ing] th[e] defendant to abort the trial merely by refusing to leave his cell . . . would make a travesty of our criminal justice system" (id.).
Applying these principles, this Court and others have recognized that a defendant's right to effective assistance of counsel, like the right to be present, may also be waived by conduct (see People v Kelly, 44 NY2d 725, 727 [1978], affg on op below 60 AD2d 220, 224 [1st Dept 1977]; United States ex rel. Testamark v Vincent, 496 F2d 641, 643-644 [2d Cir 1974] [cited by Henriquez, 3 NY3d at 216]; see also Henriquez, 3 NY3d at 216 n 2 [collecting cases]; People v Higgins, 23 AD2d 504, 504 [2d Dept 1965], affd without op 16 NY2d 751 [1965]; United States v Nichols, 77 F4th 490, 499-500 [7th Cir 2023]). In People v Kelly, for instance, defense counsel remained mostly silent after the defendant asked for counsel to be relieved, and "[t]he [trial] court's efforts to ascertain whether [the] defendant wanted to be represented by counsel or wanted to appear pro se were met by unresponsive statements that the defendant would be judged by Allah and that Allah would advise him" (see 60 AD2d at 222-223). The Appellate Division was "at a loss to understand what else the [trial] court should have done" after its "fruitless effort . . . to ascertain what the [*6]defendant wanted" (id. at 224). Reasoning that "[a]n experienced criminal defendant . . . should not be permitted to nullify a trial and require a new trial by the simple expedient of obstructing every effort of the court to assure to the defendant his legal rights and a fair trial," the Court stressed that "[a] criminal trial is not an obstacle course for the judge," and "[t]here comes a point where a defendant must bear the consequences of [their] conduct, in a courtroom as well as out of it" (id.). The Court therefore affirmed the defendant's conviction (see id. at 225), as did we, adopting that Court's reasoning (see 44 NY2d at 727).B.

In light of the trial court's many warnings to defendant and defendant's obstructive behavior in response, there is record support for the conclusion that, by his conduct, defendant waived the right to effective assistance of counsel. A trial court must be cautious not to conflate waiver of the right to be present at trial with waiver of the right to effective assistance of counsel. These rights are separate, and a trial court has distinct duties to ensure the validity of a defendant's waiver of each. However, in certain circumstances, as in this case, the same conduct may amount to a waiver of both rights.[FN4] Here, defendant has never contested that he waived the right to be present and the record makes clear that he did so, including by continually absenting himself from the proceedings. In addition, the court repeatedly and unequivocally denied defendant's requests for new counsel and explained that defendant would not be receiving substitute counsel. The court also continuously reminded defendant that he could choose to represent himself or authorize his attorney to participate in the proceedings at any time—options that defendant unequivocally repeatedly refused. The court [*7]likewise gave defendant numerous warnings—and attempted to provide several more—regarding the fundamental rights at stake, and made clear at least five times that it would not suffer defendant's delay tactics and that his trial would proceed.
Faced with this situation, defendant directed his attorney not to participate in the proceedings and insisted 10 times, despite the court repeatedly advising him otherwise, that he had fired his attorney. In response, the court directly posed to defendant the choice between proceeding with his attorney or representing himself, and faced with this choice, in an apparent effort to obstruct the proceedings notwithstanding the court's warning that the trial would continue, defendant chose to simply leave the courtroom, knowing that the trial would proceed without him. Defendant thus anticipated and desired that his trial would proceed just as it did—both outside his presence and without him or his lawyer mounting a defense.
Defendant's intention to obstruct the trial is also made plain by his persistent refusal to change into civilian clothing and insistence on absenting himself from the proceedings in response to the court's many efforts to engage with him. Indeed, the trial court observed that multiple other defendants had recently engaged in such tactics in other courtrooms in the county.[FN5] Moreover, defendant had previously been tried and convicted by a jury—prior experience that further indicates he understood the importance of having trial counsel's representation. And when the court informed him each day of the status of the trial—including, on the last day of trial, that the People had presented opening argument and 10 witnesses in his absence—defendant made no objection, expressed no surprise, and continued his obstructive behavior. These facts show that at the time of defendant's waiver before trial began, defendant was well aware of the nature and importance of the right to meaningful representation and knowingly chose to forego that right (see People v Blue, 42 NY3d 584, 592 [2024] [explaining that the "court may look to the whole record" when assessing a defendant's knowledge at the time of waiver]). Under the totality of these circumstances, defendant waived the right to be present and the right to effective assistance of counsel.
We confronted similar circumstances in People v Henriquez, in which the defendant instructed his attorney not to participate at trial and refused self-representation even though the court "explain[ed] the magnitude of the decision facing [the] defendant, . . . repeatedly informed [the defendant] of his right to utilize the services of his attorney, . . . and directed defense counsel to remain available to assist" (3 NY3d at 216-217). We held that the "[d]efendant's desire to prevent counsel's participation, coupled with his adamant refusal to represent himself, translate[d] into an intentional failure to avail himself of his constitutional 'right to a fair opportunity to defend against the State's accusations' " (id. at 215). The record in this case supports the same conclusion (see id.; Higgins, 23 AD2d at 504 [the defendant "willfully decided to forego any representation or to assert any defense unless the trial court granted his demand to which, concededly, he was then not entitled. . . . (The d)efendant's position was substantively equivalent to an express waiver of counsel, since he adamantly refused to proceed with the assigned counsel to which he was properly limited"]; cf. United States v Moore, 706 F2d 538, 540 [5th Cir 1983] [under the federal standard for waiver of the right to counsel, "a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel"]).
Defendant argues that his waiver was invalid given that the trial court's pretrial colloquy here was less thorough than the one we deemed adequate in Henriquez (see 3 NY3d at 217). While it is true that the trial court did not explicitly ask defendant whether he wished to waive the right to effective assistance of counsel, as is usually required, the only conclusion to be drawn from defendant's behavior throughout the colloquies is that he waived that right by his conduct. Prior to and throughout the trial, the court repeatedly attempted to engage defendant in colloquies to advise him of his rights, but each time, defendant prevented the court from engaging in a more fulsome colloquy by refusing to respond when addressed and continually walking out of the courtroom.[FN6] We decline to require a court to forcibly restrain a defendant in this circumstance, as that would be an impracticable "empty gesture" (Epps, 37 NY2d at 351; see Henriquez, 3 NY3d at 215 n 1; Dunton, 42 NY3d at 109).
We also reject the dissent's contention that the court could have "replaced [defense counsel] with other counsel" or "order[ed defense counsel] to represent [defendant] effectively" (dissenting op at 10). As to the former argument, defendant does not challenge the Appellate Division's unanimous holding that the trial court properly denied his request for new counsel (see 228 AD3d at 1227; id. at 1229 [Montour and Ogden, JJ., dissenting]). As to the latter, the dissent provides no legal authority for its suggestion that a judge can dictate the strategy or conduct of a litigant's attorney (see dissenting op at 10-13), and in all likelihood that solution would overstep the trial court's authority (People v Hills, 140 AD2d 71, 81 [2d Dept 1988] ["It is not for the (t)rial (j)ustice, no matter how well motivated, to usurp the role of counsel for either side in a criminal trial because of the court's conception as to how the case should be presented"]; People v Arnold, 98 NY2d 63, 68 [2002] ["A court may not, however, assume the advocacy role traditionally reserved for counsel"]; Edwards v United States, 795 F2d 958, 963 [11th Cir 1986] ["defense strategy and tactics are a matter for decision by (the) defendant and (their) counsel, without interference by the (c)ourt"]).
We therefore conclude that defendant, by his conduct, waived the right to effective assistance of counsel.III.

We turn to defendant's challenge to his consecutive sentences. The People concede that defendant improperly received consecutive sentences on the two counts of simple possession (counts 2 and 4). We accept the People's concession that the sentences on counts 2 and 4 should run concurrently. That leaves us to determine, with respect to each underlying incident, the legality of the consecutive sentences for simple possession and possession with intent to use.
Concurrent sentencing is required "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission" (Penal Law § 70.25 [2]). In determining whether consecutive sentences are permitted, a court must determine "whether the actus reus element[s]" of the offenses are, "by definition, the same" (People v Laureano, 87 NY2d 640, 643 [1996] [italics omitted]). If so, "the People may yet establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by [the] defendant were separate and distinct acts" (id.; see e.g. People v Ramirez, 89 NY2d 444, 453-454 [*8][1996]; People v Braithwaite, 63 NY2d 839, 843 [1984]; People v Brown, 80 NY2d 361, 364-365 [1992]; People v Truesdell, 70 NY2d 809, 811 [1987]).
Although this Court has previously addressed consecutive sentencing in the context of "weapons possession and interrelated, ensuing substantive crimes" (People v Wright, 19 NY3d 359, 365 [2012] [possession with intent to use and murder]; see e.g. People v Billups, — NY3d —, — [2026] [decided today] [simple possession and murder/robbery]), we have not yet had occasion to analyze consecutive sentencing where two possessory offenses, simple possession and possession with intent to use, are at issue. Here, we agree with defendant that his consecutive sentences for simple possession and possession with intent to use, with respect to each incident, are improper, because the offenses' actus rei are the same (see Penal Law § 70.25 [2]; Laureano, 87 NY2d at 643). A person commits the offense of simple possession of a weapon by unlawfully "possess[ing] any loaded firearm" (Penal Law § 265.03 [3]). This is accomplished by exercising "dominion and control" over such a weapon (People v Okafore, 72 NY2d 81, 87 [1988]; People v Brown, 21 NY3d 739, 750 [2013])—an act that "by its nature" is "continuous" and "may go on for hours or days" (Wright, 19 NY3d at 366). Meanwhile, a person commits the offense of possession of a weapon with intent to use by committing the same actus reus—"possess[ing] a loaded firearm"—with the mens rea of "intent to use the same unlawfully against another" (Penal Law § 265.03 [1] [b]). The statutory actus rei for these offenses are therefore identical "by definition" (Laureano, 87 NY2d at 643).
As such, to establish defendant's eligibility for consecutive sentencing with respect to each incident, the People bore the burden of showing that defendant's possession of the gun for the simple possession and possession with intent to use crimes arose from separate and distinct acts. The People failed to shoulder that burden on this record. Thus, the sentences for counts 1 and 2 must run concurrently, as must the sentences for counts 3 and 4.[FN7]
Accordingly, the order of the Appellate Division should be modified in accordance with this opinion and, as so modified, affirmed.

HALLIGAN, J. (concurring):

I agree with the majority that, under the circumstances of this case, the defendant waived his right to the effective assistance of counsel. I write separately to address two points raised by the dissent. First, the dissent posits that a defendant may not waive both the right to be present at trial and the right to counsel because "[d]ue process, both New York and federal, does not allow a criminal defendant to be both absent and unrepresented" (dissenting op at 3). The dissent cites no caselaw for this proposition but argues that the development of the adversarial trial system and our right to counsel jurisprudence make clear that these rights "cannot be waived at the same time" (dissenting op at 14). Although our caselaw holds that a defendant can knowingly, intelligently, and voluntarily waive each of these rights, the question of whether the combination of both waivers would run afoul of the foundational principles of a fair trial was not explored at all in the briefs before us, and we have no occasion to reach out and address it. With the understanding that we do not reach a decision on this question, I join the majority.
Second, the dissent argues that "[e]ven though Mr. Lewis attempted to fire Mr. Lembke at the start of trial, if the trial court ordered him to continue to represent Mr. Lewis, he had a duty to do so" (dissenting op at 4). The dissent cites various rules of professional conduct, including those that indicate an attorney retains the authority to make strategic and tactical decisions at trial. This argument echoes that set forth by Judge Smith in dissent in People v Henriquez (see 3 NY3d 210, 217-232 [2004, Smith, J., dissenting]). Although the Henriquez majority did not explicitly address Judge Smith's comments about the allocation of decision-making authority between a defendant and their counsel, I agree with the majority that the Court implicitly rejected this argument in holding that waiver of the right to effective assistance of counsel was permissible (see id. at 215-217). I see no ground for revisiting this conclusion given that no party has asked us to do so, as the majority notes (see majority op at 10 n 3).

WILSON, Chief Judge (dissenting):

Jarvis Lewis was convicted and sentenced to 40 years in prison as the result of a jury trial he did not attend and at which counsel did not represent him. Both the New York and United States Constitutions grant criminal defendants the right to be represented by counsel (including counsel of their choice, at their own expense) and the right to represent themselves. Both Constitutions also grant criminal defendants the right to be present at trial. For the first time in the history of our Court (or any American court, as far as I can tell), the majority has blessed a trial conducted with no defendant and no counsel.
Mr. Lewis's counsel, Matthew Lembke, was there in name only, and perhaps not even that, [*9]because immediately before the start of jury selection, the court announced that the trial would proceed in Mr. Lewis's absence and ordered Mr. Lembke to serve not as counsel, but as "standby" counsel. Mr. Lembke did nothing. Despite his strong and repeated entreaties, which the prosecutor also emphasized, urging that the court needed to give clear instructions to defense counsel, had misunderstood Mr. Lewis's statements, and should not proceed with a trial in which defense counsel did not participate, the court went forward anyway.
Mr. Lewis was a difficult, obstructionist defendant. Just before the start of trial, Mr. Lewis tried to fire Mr. Lembke (whom he had retained). The court denied his request for new counsel. The court did not conduct a colloquy sufficient to show that Mr. Lewis had waived his right to counsel, possibly because Mr. Lewis made it impossible to do so, though we cannot be certain of that. Instead, the court conducted a colloquy directed at determining whether Mr. Lewis understood the consequences of his refusal to attend trial; neither that colloquy nor Mr. Lewis's conduct was sufficient to meet the very high standard to assure a defendant's knowing, intelligent and voluntary waiver of the right to be present. Nevertheless, at various points the court stated that the trial would proceed without Mr. Lewis present. The orderly administration of justice surely required the court to respond to Mr. Lewis's disruptive behavior—just not the response at which the court arrived.
It was possible for Mr. Lewis to waive his right to be present at trial; it was possible for him to waive his right to counsel. But it was not possible for him to waive both, for the painstakingly obvious reason that a trial conducted with no defendant and no defense counsel is no trial at all. Due process, both New York and federal, does not allow a criminal defendant to be both absent and unrepresented. Mr. Lewis's intransigence, refusal to represent himself and refusal to attend his trial left two constitutionally sound choices: either appoint new counsel, or hold that Mr. Lewis had waived his right to be present at his trial and direct counsel to defend his client.I.

Two things stand out about the majority's opinion. First, the majority extensively recites portions of the record to show that the court instructed Mr. Lembke that he was representing Mr. Lewis at trial, but then the majority holds that Mr. Lewis waived his right to counsel though his conduct. Those cannot be simultaneously true: either Mr. Lewis waived his right to counsel, in which case he had no counsel, or, as the majority sometimes says, the court ordered Mr. Lembke to represent him at trial. Second, the majority omits portions of the record that show what really happened: the court misunderstood Mr. Lewis, who never said he had instructed Mr. Lembke to act as his lawyer and not participate; disregarded Mr. Lembke's request for instruction from the court about what to do; and likewise disregarded the prosecutor, who advised the court that the way it was proceeding would result in a reversal on appeal.
As to the first point, the majority's analysis rests on its position that, faced with the fact that Mr. Lewis would not let it conduct a traditional colloquy to confirm either his desire to proceed pro se or his knowing, voluntary and intelligent waiver of his right to counsel, the trial court had only two choices: (1) find that Mr. Lewis waived his right to counsel by conduct and proceed without him or (2) conduct a proper colloquy by "forcibly restrain[ing]" Mr. Lewis (majority op at 17). That misapprehends the duties and powers of defense counsel and the trial court alike.
If, as the majority sometimes says, the court instructed Mr. Lembke to represent Mr. Lewis, he had a duty to represent him competently. Even though Mr. Lewis attempted to fire Mr. Lembke at the start of trial, if the trial court ordered him to continue to represent Mr. Lewis, he had a duty to do so (Rules of Professional Conduct [22 NYCRR 1200.0], rule 1.16 [d] ["When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating [*10]the representation"]; see also ABA Model Rules of Professional Conduct, rule 1.16 [c] [same]). The duty to represent a client is a duty to represent that client competently (Rules of Professional Conduct [22 NYCRR 1200.0], rule 1.1 [a]), and the decision as to how to effectuate that representation is in the hands of the lawyer. Although the client retains ultimate authority over a small number of very important decisions such as entering a plea, waiving a jury trial, testifying or taking an appeal (Rules of Professional Conduct [22 NYCRR 1200.0], rule 1.2), a criminal defendant represented by counsel "'retains authority only over certain fundamental decisions regarding the case' . . . With respect to strategic and tactical decisions concerning the conduct of trials, by contrast, defendants are deemed to repose decision-making authority in their lawyers" (People v Colon, 90 NY2d 824, 825-826 [1997], quoting People v White, 73 NY2d 468, 478 [1989]). As ABA Standard 4-5.2 (d) provides: "[s]trategic and tactical decisions should be made by defense counsel, after consultation with the client," but only "where feasible and appropriate" (ABA Standards for Criminal Justice, Defense Function, standard 4-5.2 (d) [4th ed 2017]).
Because the court ordered Mr. Lembke to serve as "standby counsel"—a term that applies when a defendant is representing himself,[FN1] Mr. Lembke sought guidance from the court. Compounding Mr. Lembke's uncertainty was the court's persistent misunderstanding of Mr. Lewis's position. Mr. Lewis never instructed Mr. Lembke to represent him and do nothing at trial, nor did Mr. Lewis ever tell the court that. To the contrary, Mr. Lewis first told the court that he had fired Mr. Lembke and did not want Mr. Lembke to represent him. After Mr. Lewis left court and returned to his cell, Mr. Lembke relayed to the court that Mr. Lewis "instructed [him] that he did not wish for me to represent him in this trial or to participate in the proceedings and in fact he [*11]directed me to leave." The court asked Mr. Lembke what Mr. Lewis had said in response to being told that the trial would proceed without him, and Mr. Lembke responded, "I didn't really ask him." With Mr. Lewis still not in court, the court ordered Mr. Lembke to stay and represent Mr. Lewis and announced that the trial would proceed. Mr. Lembke emphasized, "I just want to reiterate that Mr. Lewis has explicitly instructed me not to participate in this proceeding. . . . He instructed me to leave." Mr. Lewis's repeated statements that he had fired Mr. Lembke and did not want him to represent him are incompatible with the idea that he instructed Mr. Lembke to represent him at trial and do nothing.
Convinced he was stuck with an impossible dilemma, Mr. Lembke told the court:
"I really am on the horns of a dilemma here and I don't know the answer to it. I have explicit instructions from my client not to participate in the proceedings. And I, quite frankly, do not know what my ethical and legal obligations are at this point. I don't know the answer to that."
The court responded, "I don't know that his desire not to have you represent him trumps my authority to order you to be here," to which Mr. Lembke responded, "I understand that the Court is ordering me to represent him, but I'm going to — I'm not going to do it." The following exchange came next:
"THE COURT: Okay. You know, you're making life a little tough here for everybody.
MR. LEMBKE: I understand.
THE COURT: But I'm moving forward with the trial and you're going to sit there. Whether you do anything or not is up to you.
MR. LEMBKE: I don't know if it is up to me. It's up to my client.
THE COURT: Well, I'm telling you right now that it's my room, I run the show, you're staying there, I'm ordering you to represent him. If you don't want to represent him, that's fine. If you think his indication to you is not to say anything on his behalf, that's fine, that's up to you."
When Mr. Lewis returned to court, the court asked Mr. Lewis if he wished to represent himself, and Mr. Lewis walked out without answering. The court then said, "Given that Mr. Lewis has waived his appearance, we'll proceed in his absence. And, Mr. Lembke, irrespective of what he said, I'm going to order you as standby counsel" (emphasis added). The court did not subsequently change Mr. Lembke's designation as standby counsel. The court then asked for prospective jurors to be brought up, at which point Mr. Lembke said, "it is my intention to — well, to follow the instruction of my now former client and not participate at all in these proceedings."
At that point, the prosecutor interjected to say the following:
"Judge, while I can respect Mr. Lembke's position in representing his client, I think that there is an overwhelming duty as an Officer of the Court to participate in the practices before your Honor. I think there's [*12]a larger requirement to your Honor to participate because I think that there's just going to be — I mean, by him just sitting there, Judge, not participating in jury selection, not participating in opening statements if he chooses to make one, not participating in any type of cross-examination, I think that that is going to not align with being an Officer of the Court. So I would just ask, I guess, for a ruling from your Honor and indication as to what Mr. Lembke's role or lack thereof is going to be here today, because I don't — I actually — I'm not really sure how we could —"
The court then mischaracterized Mr. Lewis's statements as "Mr. Lewis has instructed Mr. Lembke not to do anything . . . So I'm not going to make Mr. Lembke do anything, other than to be here, and whether he participates or not, that's not up to me, that's up to Mr. Lewis, and Mr. Lewis has apparently given him a specific instruction." Mr. Lembke then attempted to correct the court's misunderstanding by saying, "I think he was very clear, especially in this last — the last time he was here in court that he is — he has discharged me as his lawyer so that creates a different circumstance."
The next morning, before jury selection resumed, Mr. Lembke asked to be relieved as counsel, citing a conflict of interest. The court denied his request. The prosecutor then reiterated her concerns even more strongly:
"The defendant has clearly made himself willingly absent from the trial and I believe your Honor has done enough — or had an opportunity to question him on that. But the People's concern at this point is that Mr. Lewis has indicated numerous times, both today — or yesterday and today, that he doesn't wish Mr. Lembke to continue to represent him, I think flat-out indicated that he's fired him. I think that there is a difference, Judge, between the — Mr. Lembke being retained and the Court appointing him. The concern at this point is that Mr. Lewis is entitled to representation and the concern of the People is that if Mr. Lembke is ordered to stay here and, as indicated on the record, will continue to stand silent no matter what, that through jury selection, as we saw briefly yesterday, your Honor, as well as exercising challenges, opening, cross, close, I think there's a sufficient and quite honestly a strong case of ineffective assistance of counsel in regard to that."

"So because of all the reasons put forward, Judge, again, the difference between the retained and an appointed attorney, I think your Honor has heard the opinion of the People quite extensively so I would be asking that an attorney be appointed to represent Mr. Lewis to ensure that he have a fair trial here even though he has made himself willingly absent from the trial."
The court did not heed the prosecutor's guidance. Instead, the trial proceeded from the court's misunderstanding that Mr. Lewis had told Mr. Lembke to stand silent while representing him, from the court's ordering Mr. Lembke to serve as standby counsel, and from the misunderstanding by both [*13]the court and Mr. Lembke—but not the prosecutor—that a trial at which Mr. Lewis was absent and Mr. Lembke was silently present as standby counsel met fundamental standards of fairness.
The majority implies that Mr. Lewis's ineffective assistance claim would fail because Mr. Lembke chose as a strategic matter to remain silent throughout the trial (majority op at 13 n 4, citing People v Diggins, 11 NY3d 518, 525 [2008]; People v Aiken, 45 NY2d 394, 399 [1978]). There are several problems with that statement. First, Mr. Lewis's strategic decisions matter only if he is counsel, which the majority concludes he was not (because Mr. Lembke was representing him). Second, Mr. Lewis never told Mr. Lembke to adopt a strategy of silence while representing him—Mr. Lewis purported to fire him and wanted Mr. Lembke to go home. Both Mr. Lembke and the prosecutor—who are both officers of the court—confirmed to the court that Mr. Lewis had not directed Mr. Lembke to represent him through silence. Third, Mr. Lembke explicitly informed the court that his silence was not strategic; as he told the court, it was "not a tactical decision on my part." Finally, the court's "order," immediately before the start of jury selection, that Mr. Lembke was "standby" counsel to an absent defendant, renders the majority's position meaningless: how can "standby" counsel—who is not permitted to appear but only to advise a defendant—adopt any strategy whatsoever?[FN2]
The court was not limited, as the majority posits, to proceeding with an ineffective counsel or chaining Mr. Lewis to his seat. The court could have, as the prosecutor urged, replaced Mr. Lembke with other counsel. But the court did not have to do so. Instead, if the court did not want to delay the trial, it had both the authority and duty to order Mr. Lembke to represent Mr. Lewis effectively, as counsel instead of standby counsel. There is no dispute that the trial court had the power to order Mr. Lembke to represent Mr. Lewis even against Mr. Lewis's wishes (People v Arroyave, 49 NY2d 264, 271 [1980] ["the constitutional right to defend by counsel of one's own choosing does not bestow upon a criminal defendant the absolute right to demand that his trial be delayed while he selects another attorney to represent him at trial"]). The majority implicitly presupposes that the power of a trial court runs only so far as ordering an attorney to be physically present in the courtroom, but surely, a judicial order to represent a client entails more than being the person at the defense table with a bar card; it comes with the duties of an advocate and officer of the court, which include the binding duty to "render service" (Powell v Alabama, 287 US 45, 73 [1932]) and render such service effectively (ABA Standards for Criminal Justice, Defense Function, standard [*14]4-1.12 [4th ed 2017] [the "primary duties" of defense counsel as an officer of the court include the duties to "advocate with courage and devotion; to ensure that constitutional and other legal rights of their clients are protected; and to render effective, high-quality legal representation with integrity"])[FN3]. Trial courts have not only the power but the responsibility to zealously guard the integrity and fairness of the proceedings before them (Code of Judicial Conduct [22 NYCRR § 100.1], canon 1; People v De Jesus, 42 NY2d 519, 523 [1977] ["as part of the responsibility of insuring a fair trial, (the trial court) may seize the affirmative, when proper and necessary, to clarify perplexing issues, to develop significant factual information, to enforce propriety, orderliness, decorum and expedition in trial"] [citations omitted]). The powers of the trial judge to deliver on that duty are vast. "[N]either the nature of our adversary system nor the constitutional requirement of a fair trial preclude a trial court from assuming an active role in the truth-seeking process" (People v Jamison, 47 NY2d 882, 883 [1979]). As we have explained, "the role of a Trial Judge in a criminal case is not merely that of an observer or even that of a referee enforcing the rules of a game . . . In fulfillment of its broader obligation to ensure the defendant a fair and impartial trial [], a court is not without power, to be exercised with judicious restraint, to keep the proceedings within the reasonable confines of the issues and to encourage clarity rather than obscurity in the development of proof" (People v Moulton, 43 NY2d 944, 945 [1978] [citations omitted]). We regularly hold trial judges to a high standard in the context of defendants wishing to proceed pro se, in evaluating the sufficiency of colloquies at sentencing, and in confirming the voluntary, knowing, and intelligent waiver of myriad constitutional rights (People v Baines, 39 NY3d 1, 4, 6-7 [2022] ["the court must undertake a searching inquiry to ensure" a pro se defendant is "aware of the dangers and disadvantages of proceeding without counsel," and this duty requires more than "brief, generalized warnings"]).
Thus, it is clear that the trial court had both the power and the responsibility to order defense counsel to perform his duty of representing his client competently. How Mr. Lembke executed that duty was up to him, subject to the requirement that it not fall below minimum standards of effectiveness, but whether he performed that duty at all was not—regardless how badly Mr. Lewis did (or did not) want Mr. Lembke to be the one doing it. The orderly administration of justice requires consequences for disruptive defendants and attorneys alike, but of course, the constitutional rights at issue here are not those of the court or defense counsel, but of the defendant.II.

When confronting a waiver issue like the one before us, it is necessary to identify the rights at stake and the scope of those rights. This case is about the right to counsel and the right to be present at trial. The right to counsel is "by far the most pervasive" of all constitutional rights because it impacts a defendant's "ability to assert any other rights he may have" (United States v Cronic, 466 US 648, 653-654 [1984]). Under the New York Constitution, the scope of that right is "far more expansive" than that recognized in the federal Constitution (People v Harris, 77 NY2d 434, 439 [1991] [citation omitted]). In a sleight of hand,[FN4] the majority claims that what Mr. Lewis forfeited is not the right to counsel, but the "right to the effective assistance of counsel" (majority op at 2). This novel formulation is meant to suggest that Mr. Lewis did not waive his right to all counsel, just his right to an effective one. But Federal and New York caselaw is very clear that no such distinction exists (McMann v Richardson, 397 US 759, 771 n 14 [1970] ["It has long been recognized that the right to counsel is the right to the effective assistance of counsel"]; People v Benevento, 91 NY2d 708, 711 [1998] ["The constitutional mandate extends to the giving of effective aid which generally means the reasonably competent services of an attorney devoted to the client's best interests"] [citations and quotation marks omitted]; People v Bennett, 29 NY2d 462, 466 [1972] [the right of counsel "means more than just having a person with a law degree nominally represent (defendant) upon a trial and ask questions"]). The majority's understanding of Mr. Lewis's right to counsel would be satisfied if, instead of Mr. Lembke, a quiet kangaroo sat in counsel's seat.
Separately, criminal defendants have a vital constitutional right "to be present at all material stages of their criminal trial" (People v Ramirez, 41 NY3d 406, 408 [2024]), a right historically rooted in an "innate aversion to default judgments in criminal matters" (People v Epps, 37 NY2d 343, 348 [1975])). The history behind these rights makes clear why they cannot be waived at the same time.
It is very hard to find criminal prosecutions where neither the defendant nor defense counsel was present, but, with some digging, I have found some. In the early period of the English common law, outlawry proceedings were often conducted with no defense counsel and no defendant present. Defendants were branded as beyond the law's protection often without knowing it, meaning they could be hunted and killed by any citizen with impunity (Epps, 37 NY3d at 348; Mark DeWolfe Howe, Process of Outlawry in New York: A Study of the Selective Reception of English Law, 23 Cornell L Rev 559 [1938]). But even 400 years ago, "such thick-skinned officials as the English judges found [it] offensive" to "permit[] such severe punishments to be visited upon a person whose defense was never heard," and those proceedings were eventually reformed (Howe, 23 Cornell L Rev at 564-565). Additionally, the right to counsel developed in light of the English common-law [*15]practice of prohibiting defense counsel from assisting defendants in felony trials, the thought being that trial judges would protect the rights of defendants, while trials were largely opportunities for the accused to speak (John H. Langbein, The Criminal Trial Before the Lawyers, 45 Univ of Chicago L Rev 263, 282, 307-308 [1978]; John H. Langbein, The Origins of Adversary Criminal Trial 48 [2003]). As the use of counsel on the prosecution side increased, the unfairness of refusing the aid of counsel to the defense became manifestly apparent (Langbein, The Origins of Adversary Criminal Trial 3-4), which is why at the Founding, the right to counsel was inscribed in the U.S. Constitution and numerous State Constitutions, including our own (1777 New York Constitution, article XXXIV). In time, with the emergence of the adversarial trial, American courts understood that trials with no counsel, or with utterly ineffective counsel, could not satisfy the requirements of our Constitution (see Powell, 287 US at 71).
History teaches us a simple point: in a criminal trial, someone must be able to speak for the defendant. That was so even before the emergence of the adversarial trial, and is only more apparent now, when the defendant faces not simply his accuser, but the machinery of the State and the expertise of learned counsel on the People's side.
The majority complains we have no "affirmative legal argument" (majority op at 13-14 n 4) as to why the right to counsel and right to be present cannot be waived at the same time. Yet "[t]he very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free" (Herring v New York, 422 US 853, 862 [1975]). Here, both defense counsel and the prosecutor contended that the trial should not go forward in Mr. Lewis's absence without a lawyer representing him fully. Mr. Lembke asked to be relieved or instructed, the court did neither, instead appointing him as standby counsel. Even the trial court at one point stated, "I certainly don't want to go through a jury trial with neither he nor an attorney in here to protect his rights," but that is exactly what happened.III.

That brings me to the majority's analysis. Tellingly, the majority cites no case in which an absent defendant was tried without counsel. To first establish that the right to counsel can be waived (not forfeited) by a defendant's conduct (instead of by his words), the majority cites to People v Kelly ( 44 NY2d 725, 727 [1978], affg on op below 60 AD2d 220 [1st Dept 1977]) and People v Higgins (23 AD2d 504 [2d Dept 1965], affd without op 16 NY2d 751 [1965]) (majority op at 12-13). But the defendants in those cases were present for their entire trials and proceeded pro se. In Kelly, after the defendant said that he would let "Allah" represent him, defense counsel asked to be relieved but was instead directed to serve as standby counsel while defendant represented himself (60 AD2d at 222). The defendant was present throughout the trial, testified in his own defense and delivered a closing statement; at least once, he conferred with his standby attorney (id.). In Higgins, the defendant made a decision "to forego any representation" and proceeded pro se. He was present throughout the trial and chose not to mount a defense, which the Appellate Division deemed "equivalent to an express waiver" (id.).
The other cases cited by the majority (majority op at 12) suffer from the same defect—all involved defense counsel or a self-represented defendant (and some involved both)[FN5]. In United [*16]States v Moore (706 F2d 538, 540 [5th Cir 1983]), after the defendant made "persistent, unreasonable demand[s]" to fire his counsel and appoint a new one, the trial court ordered him to proceed pro se with standby counsel; both the defendant and counsel were present the entire time (id.). Similarly, in United States ex rel. Testamark v Vincent (496 F2d 641, 643-644 [2d Cir 1974]), after defendant refused to either proceed pro se or moving forward with appointed counsel, he represented himself with standby counsel at the trial; he simply chose to do nothing. The Second Circuit noted that "[a]ctually, the court gave [defendant] both" the right to counsel and right to proceed pro se, as defense counsel "was available at all times" while defendant represented himself (id. at 644). In United States v Nichols (77 F4th 490 [7th Cir 2023]), the defendant proceeded pro se after waiving the right to counsel (id. at 502).
The majority's reliance on Epps (37 NY2d at 346-347) suffers from the same incongruity, and the irony is especially heightened there. In Epps, defendant made a "conscious[] and active[]" decision to boycott his own trial (37 NY2d at 350), which waived his right to be present (id. at 350-351). But Mr. Epps's counsel was present throughout the trial (People v Epps, 71 Misc 2d 1075, 1076-1077 [Sup Ct 1972]) and cross-examined at least three of the witnesses (Epps, 37 NY2d at 346-347). The majority ignores the fact that it was specifically because defendant enjoyed the protections of the right to counsel that this Court had earlier established that the right to be present could be waived at all (id. at 349 ["in view of the development of the right to counsel and the abandonment of trials by ordeal or battle, there appeared no reason for considering this right nonwaivable"] [citations omitted]).
As explained previously, the majority's proposition that Mr. Lewis waived his right to counsel by instructing Mr. Lembke to be silent is not remotely borne out by the record. The attempt to shoehorn this record to fit within our holding in People v Henriquez (3 NY3d 210 [2004]) (majority op at 15-18) falls flat for a few reasons. First, the defendant in Henriquez unequivocally informed the court that he wanted his attorney to represent him at trial and wanted him to do so by remaining completely silent because he did not want to put on a defense at all [FN6]. Defense counsel informed the court the defendant had instructed him specifically "not to cross-examine any witnesses, not to object to any line of questioning, not to . . . approach the bench, not to participate in any bench conferences or side bars, not to have any defense in this case, not to call any witnesses, not to sum up, not to do anything" (3 NY3d at 212-214). The defendant in Henriquez repeatedly acknowledged the court's warnings that counsel could offer him assistance, and after conferring with counsel, the defendant still "insisted that counsel do nothing" (id. at 213-214). Here, by contrast, Mr. Lewis insisted, over and over, that Mr. Lembke was fired; he never once instructed Mr. Lembke not to call witnesses, not to cross-examine witnesses, not to deliver an opening or closing statement, or not to make objections. Instead, both Mr. Lewis and Mr. Lembke made clear that Mr. Lewis had fired (or attempted to fire) Mr. Lembke, and did not want him at the trial at all. Mr. Lembke made clear to the court repeatedly that his lack of participation was "not a tactic" and that "the manner in which I proceed or don't proceed in this trial is not a tactical decision on my part."
Second, Henriquez is distinguishable because it involved a substantial colloquy conducted by trial court, a colloquy that confirmed the defendant's waiver was knowing, voluntary and intelligent (id. at 217-218). Describing that colloquy, we explained:
"The record establishes that the efforts by the trial court were aimed at explaining the magnitude of the decision facing defendant . . . Defendant's responses reveal that he acted with full knowledge and appreciation of the panoply of constitutional protections that would be adversely affected by counsel's inability to participate—the right to make an opening statement to the jury, to cross-examine the People's witnesses, to present exculpatory or mitigatory evidence, to testify on his own behalf and to request favorable jury instructions or the submission of lesser included offenses" (id.).
The trial court specifically asked the defendant to confirm he understood he had the right to make an opening statement, testify on his own behalf, call witnesses, and a right to object, and that he had discussed possible defenses. To each question, the defendant answered either "yes" or explained his thinking, and clarified with a back-and-forth with the trial court. Here, although the trial court told Mr. Lewis that he had the right to assist in his own defense, to confront witnesses against him, to testify on his own behalf, he never confirmed that Mr. Lewis understood what any of those things meant, which in the waiver context, makes all the difference—to establish a knowing, voluntary and intelligent, it must be clear that the defendant acted "with full knowledge and appreciation of the panoply of constitutional protections that would be adversely affected by counsel's inability to participate" (id. at 217).
Third, the disagreement between the majority and dissent in Henriquez illustrates that both would have disagreed with the majority's result here. Judge Smith's dissent contended that the trial court and defense counsel erred by "accord[ing] to defendant the right to make decisions regarding trial strategies and tactics" and allowing him to proceed pro se without giving himself any meaningful representation (id. at 218 [Smith, J., dissenting]). The majority responded that, if the court had ordered defense counsel to represent defendant, the defendant would have become disruptive and "impair[ed his] right to be present" (id. at 215 n 1). The Henriquez majority's view, therefore, was an either/or between waiving the right to counsel or waiving of the right to be present. The Henriquez majority could not have responded as it did if it believed that a trial could proceed with an absent defendant and a counsel who did nothing.
In sum, what the majority has approved here is unprecedented. The majority fails to identify a single case in which an absent, unrepresented defendant was tried and convicted. Nor can it fit this case under the framework of a more conventional waiver case like Henriquez, because there was no colloquy conducted, and Mr. Lewis never told Mr. Lembke to be silent as a strategic matter. The majority faithfully recites Henriquez's holding that "[a]n accused awaiting trial therefore has only two choices regarding legal representation—proceed with counsel or waive the protection of the Sixth Amendment and proceed pro se" (majority op at 10, citing Henriquez, 3 NY3d at 215), yet in the same breath invents a third choice—not for the defendant to make but for the court to impose: go forward with no defendant and "standby" counsel with no one to stand by.
Whether we think of Mr. Lewis's conduct as a waiver, forfeiture or simply choice not to attend his trial, it is clear that he did not attend. As the majority recounts, Mr. Lewis walked out on multiple occasions and several times requested to be taken back to jail. When the court attempted to describe to him some of the rights he would be foregoing by failing to be present in the courtroom, Mr. Lewis was nonresponsive. All this suggests that Mr. Lewis "had the opportunity to be present" at trial, but by knowing and intelligent choice, "failed to avail himself of the opportunity by his own volition" (Epps, 37 NY2d at 350). But his absence also means he did not, because he could not (at [*17]the same time) waive his right to counsel. Because I would reverse the lower courts' determination that Mr. Lewis waived his right to the effective assistance of counsel, I do not address his challenge to his consecutive sentences.IV.

The job of a trial judge is challenging even without the pressures of a disruptive, uncooperative and stubborn defendant like Mr. Lewis. But our courts are entrusted with a solemn responsibility to ensure the integrity of our criminal justice system. Mr. Lewis is not the first defendant, and will not be the last, to throw fistfuls of sand into the gears of a trial court. Nevertheless, or perhaps especially because this is so, we must expect our trial courts to address these situations with the utmost care: "The pressures on state executive and judicial officers charged with the administration of the criminal law are great. . . . But it is precisely the predictability of those pressures that makes imperative a resolute loyalty to the guarantees that the Constitution extends to us all" (Brewer v Williams, 430 US 387, 406 [1977]). The question here is not whether Mr. Lewis was, in fact, guilty of the crimes he was alleged to have committed, or whether he was disruptive, dilatory or delinquent at trial. The question is whether, under the protections afforded to every person by the U.S. and New York State Constitutions, our society permits an absent defendant to be tried and convicted without representation by counsel. History makes clear that we cannot, even if today's majority can.
Order modified in accordance with the opinion herein and, as so modified, affirmed. Opinion by Judge Singas. Judges Rivera, Garcia, Cannataro, Troutman and Halligan concur, Judge Halligan in a concurring opinion. Chief Judge Wilson dissents in an opinion.
Decided March 19, 2026

Footnotes

Footnote 1: Defendant had previously been appointed counsel, but retained another attorney after his motion to suppress was denied.

Footnote 2: Defendant was represented by new counsel at sentencing.

Footnote 3: The dissent states that we engage in a "sleight of hand" through the "novel formulation" of "claim[ing] that what [defendant waived] is not the right to counsel, but the 'right to effective assistance of counsel' " (dissenting op at 13). However, Henriquez uses this same language (see 3 NY3d at 216). Neither party asks us to revisit Henriquez, nor does either party ask us to make the distinction the dissent now makes. On the contrary, both parties frame the issue as whether defendant waived the right to effective assistance of counsel. So does the dissent itself (see dissenting op at 22).

Footnote 4: We reject the dissent's contention that it is impossible for a defendant to waive both rights (see dissenting op at 2-3, 14-16), which was not pressed by defendant. The dissent puts forward no affirmative legal argument as to why there is no circumstance in which a defendant could engage in deliberate and knowing conduct to intentionally remove himself from the courtroom and hamstring counsel, resulting in a desired waiver of both rights. The dissent instead broadly asserts that the trial was unfair, based on its belief that defendant's rights were violated (see dissenting op at 3, 15-16). The "painstakingly obvious" problem with that assertion (dissenting op at 3) is that defendant chose to waive the rights in question. Nor is the dissent correct that we have "blessed a trial conducted with no defendant and no counsel" "[f]or the first time in the history of our Court [ ]or any American court" insofar as the dissent equates non-participating counsel with "no counsel" (dissenting op at 1). This Court has twice noted that trials conducted with an absent defendant where counsel chose, as a matter of trial strategy, not to participate would not give rise to a meritorious claim of ineffective assistance of counsel (see e.g. People v Diggins, 11 NY3d 518, 525 [2008] [counsel's "nonparticipation" while defendant was "concededly tried in absentia" may have been a "protest strategy"]; People v Aiken, 45 NY2d 394, 399 [1978] [declining to "reverse an absented defendant's conviction because of counsel's refusal to actively participate at trial"]). Nor do defense counsel's ethical obligations (see dissenting op at 4-5, 11-12) bear on whether defendant chose to waive his right to effective assistance of counsel, as the Henriquez court implicitly rejected this argument (compare Henriquez, 3 NY3d at 225-232 [G.B. Smith, J., dissenting] [contending that defendant could not waive right to effective assistance of counsel because permitting the waiver would sanction unethical attorney conduct]; with id. at 215 n 1 [majority opinion rejecting the dissent's position]).

Footnote 5: Whether this was part of a coordinated plan to disrupt proceedings (see Epps, 37 NY2d at 346-347) or defendant's own plan, the result is the same: his conduct evinced his intent to knowingly and intelligently waive his right to be present and his right to effective assistance of counsel.

Footnote 6: The trial court used the term "standby counsel" in reference to defendant's attorney (see dissenting op at 5 & n 1, 9-10, 22). But the record makes clear that, as in Henriquez, the court ordered defense counsel to remain present throughout the trial so that "defendant was keenly aware that he could change his mind at any time and counsel would mount a defense" (see 3 NY3d at 217).

Footnote 7: The People have not requested remittal for resentencing if we deem defendant's consecutive sentences improper.

Footnote 1: As we explained in People v Sawyer (57 NY2d 12, 22 [1982]), the phrase "standby counsel" refers to an attorney who remains available during a trial in which the accused is proceeding pro se. The attorney remains present in order to (1) aid the accused "if and when" she requests help and (2) to "represent the accused in the event that termination of the defendant's self-representation is necessary" (id., quoting Faretta v California, 422 US 806, 834 n 46 [1975]). It is a discretionary matter of trial management (People v Mirenda, 57 NY2d 261, 266 [1982]), and applicable only to instances where a defendant is representing himself. Standby counsel is not usually permitted to make objections or opening or closing statements, examine or cross-examine witnesses, or act as an attorney on the record (McKaskle v Wiggins, 465 US 168, 178 [1984] [noting that "(i)f standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance" the right of self-representation would be impaired]; ABA Standards for Criminal Justice, Special Functions of the Trial Judge, Standard 6-3.7 [3d ed 2000] ["the trial judge should ensure that counsel not actively participate in the conduct of the defense unless requested by the accused or directed to do so by the court"]). The majority ignores this point, simply stating that Mr. Lembke was there so Mr. Lewis would be "keenly aware" that he could change his mind, like counsel in Henriquez (majority op at 17 n 6). Yet the standby counsel in Henriquez fulfilled the proper role of standby counsel because he was standing by a defendant who was present throughout the trial and who communicated with him at trial. Standby counsel Lembke, on the other hand, had no one to stand by. 

Footnote 2: Furthermore, neither Diggins nor Aiken can support the majority's effective rejection of Mr. Lewis's ineffective assistance of claim on the basis that he instructed counsel to remain silent (contra majority op at 13 n 4). The question in Diggins was whether the trial court erred in denying an adjournment for the defendant to obtain the minutes of a prior trial where the defendant had not attempted to do so for four months, in connection with his claim that he should not have been adjudicated a persistent felony offender because his lawyer in the prior case was ineffective (Diggins, 11 NY3d at 521). The defendant had not even tendered any evidence showing that he was actually unrepresented at the prior trial. In Aiken, the Court determined that on the facts of that case, counsel was deliberately attempting to obstruct a trial by a protest strategy of nonparticipation to preserve an argument that the trial could not proceed with a jury that had been partially picked with the defendant present after the defendant absconded (45 NY2d at 399). Here, the record clearly rebuts any such presumptive inference one might reach through standby defense counsel's nonparticipation.

Footnote 3: The cases on which the majority relies for the proposition that the trial court could not have ordered Mr. Lembke to represent Mr. Lewis as counsel, instead of as standby counsel, and to instruct him that he had to represent his client fully and consistently with the ethical obligations of counsel, do not support that contention (see majority op at 17-18, citing People v Hills, 140 AD2d 71, 81 [2d Dept 1988]; People v Arnold, 98 NY2d 63, 68 [2002]; Edwards v United States, 795 F2d 958, 964 [11th Cir 1986]). Those cases recognized the well-established point that trial courts possess "wide discretion in directing the presentation of evidence" (Arnold, 98 NY2d at 67). It is no challenge to see that a line might be crossed when trial judges call their own witnesses sua sponte (id.), are asked to raise insanity defenses for defendants (Edwards, 795 F2d at 963) or force parties into a stipulation (Hill, 140 AD2d at 81). But ordering counsel as to "how [a] case should be presented" (id.) is quite distinct from ensuring a competent case is presented at all.

Footnote 4: The majority ignores that Henriquez (three times by my count) refers to the "right to counsel" (3 NY3d at 215-216), indicating that the majority in Henriquez, like me, considers right to the effective assistance of counsel the same thing as the right to counsel (majority op at 10 n 3). That attempted distinction is the majority's, not mine (contra majority op at 10 n 3). There is simply no legal distinction between the two (infra, pp. 13-14), which is perhaps why the term "right to counsel" appears in more than 500 U.S. Supreme Court decisions, while "right to effective counsel" appears in fewer than 20, with the latter emphasizing that the right to counsel must always be effective. I assume the majority's persistence in using "right to effective counsel" is to point out that Mr. Lewis did not waive his right to counsel but only his right to effective counsel, and he had counsel, just not an effective one.

Footnote 5: It bears noting that in neither Kelly nor Higgins did the majority say specifically that the right to counsel was "waived by conduct" (majority op at 12), and in the nearly 50 years since the later of those decisions, our Court has never said anything of the sort. Why not? Because in most cases when a defendant's conduct jeopardizes the right to counsel, the more apt characterization of the issue is forfeiture, not waiver, as the former involves an objective evaluation of defendant's conduct, rather than his state of mind (People v Corley, 67 NY2d 105, 110 [1986]). United States v Goldberg (67 F3d 1092, 1100-1102 [3d 1995]) likewise explains that situations in which a defendant's conduct, not words, might constitutionally result in the loss of the right to counsel should be examined under the standard for forfeiture, not waiver (id. at 1101). But the majority cannot rely on forfeiture, because the People concede they never argued that point (oral argument tr at 20), and even if they raised it, forfeiture of the right to counsel can only be effectuated by "egregious conduct" by a defendant "as a matter of extreme, last-resort analysis" (People v Smith, 92 NY2d 516, 521 [1998]). The "egregious conduct" subject to a forfeiture analysis has previously involved defendants who "put a knife in the attorney's head" (id. at 518), "brutally assault[]" an attorney (People v Gilchrist, 239 AD2d 306, 307 [1st Dept 1997], lv denied 91 NY2d 834 [1997]), or "spit[] at and threaten" multiple attorneys (People v Wilkerson, 294 AD2d 298, 298 [1st Dept 2002], lv denied 98 NY2d 772 [2002]). That is of course nothing comparable to Mr. Lewis's disruptive behavior, and we have firmly established that the right to counsel would be meaningless if dilatory or uncooperative behavior constituted forfeiture (People v Shanks, 37 NY3d 244, 254 [2021] ["A defendant does not forfeit the right to counsel simply by being argumentative or uncooperative with counsel or by moving to reassign counsel as a mere dilatory tactic. The right to counsel would be almost meaningless if every defendant who quarreled with their attorney about their defense or attempted to delay the proceedings forfeited the right to counsel"]).
Footnote 6: The facts in Henriquez show why my concurring colleague's view that the majority there implicitly decided something about the duties of trial counsel is unwarranted (Halligan, J., concurring op at 2). Mr. Henriquez shot his girlfriend to death, immediately walked up to a police car and told the officer what he had just done (3 NY3d at 211-212). His instruction that his counsel represent him and not put on a defense is tantamount to pleading guilty to the whole indictment—a decision solely in a defendant's discretion, and understandable in those circumstances. That he wanted to do so at a public trial instead of privately does not bear on the responsibilities of trial counsel in the way my colleague believes, where a defendant wants a defense but is not present. The majority makes the same assertion but bases it on footnote 1 in Henriquez, which says: "Nor is the dissent's analysis a prescription for an orderly adversarial process. On the contrary, such an approach may provoke disruptive, 'obstreperous' objections from a defendant . . . which . . . may even result in the removal of the accused from the courtroom, thereby impairing a defendant's right to be present" (see majority op at 13-14 n 4, citing 3 NY3d at 215 n 1). That footnote demonstrates the opposite of the majority's claim: requiring counsel to adhere to ethical obligations involves upholding one constitutional right at the expense of another. But where, as here, the court first held that Mr. Lewis waived his right to be present at trial, the Henriquez majority's concern evaporates. Thus, footnote 1 implicitly supports the proposition that both the right to be present and the right to counsel cannot be simultaneously denied.